IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Daniel J. RAYMONDS, Attorney at Law.

BOARD OF ATTORNEYS PROFESSIONAL RESPONSIBILITY,
Complainant-Appellant,

v.

Daniel J. RAYMONDS, Respondent-Respondent.

Supreme Court

*No. 97–1440–D. Submitted on briefs September 7,
2000.—Decided October 26, 2000.*

2000 WI 116

(Also reported in 618 N.W.2d 521.)

846

For the complainant-appellant there were briefs by *Gene B. Radcliffe*, Black River Falls.

For the respondent-respondent there was a brief by *Gerald P. Boyle, Bridget E. Boyle* and *Boyle, Boyle & Smith, S.C.*, Milwaukee.

¶ 1. PER CURIAM. The Board of Attorneys Professional Responsibility (Board) appealed from the recommendation of the referee that Attorney Daniel J. Raymonds receive a private reprimand and that his continued practice of law be conditioned for one year on his quarterly reporting to the Board of his handling of his client trust account in response to his professional misconduct. That misconduct consisted of overdrawing his client trust account, which resulted in at least one check written on it being dishonored when presented for payment, commingling personal funds in his trust account, failing to reconcile the trust account on a monthly basis, which resulted in an unexplained shortfall in the funds he held in trust, and misrepresenting to the Board the source and amount of funds he borrowed and deposited in the trust account in order to cover bank service charges that had been paid with funds held in trust and to cover the shortfall. The Board argued that the seriousness of Attorney Raymonds' misconduct warrants a 90-day suspension of his license to practice law and the imposition of conditions in addition to that recommended by the referee in order to ensure Attorney Raymonds' compliance with the trust account rules.

¶ 2. We determine that the 90-day license suspension and imposition of the conditions urged by the

Board are the appropriate disciplinary response to the nature and extent of Attorney Raymonds' misconduct established in this proceeding. While not reaching the level of withdrawing funds of clients and others held in trust and converting them to personal use, Attorney Raymonds knowingly permitted his bank to deduct trust account funds belonging to clients and third persons in payment of bank service charges on that account over an extended period. His failure to maintain records of his trust account activity required by our rules resulted in overdrafts on that account and contributed to an unexplained $100,000 shortfall in the account, which he attempted to cover by depositing borrowed funds. His misrepresentation to the Board as to the source of those borrowed funds, while of little moment, was nonetheless misrepresentation to the body charged by this court with the responsibility of promoting and enforcing the high standards of professional conduct we require of those we license to represent others in our legal system.

¶ 3. Attorney Raymonds was admitted to practice law in Wisconsin in 1981 and practices in Milwaukee. He has not been the subject of prior discipline other than the temporary license suspension we imposed in the course of the instant proceeding for his failure to comply with an order of the referee for an audit of his trust account to determine if harm to clients or his own personal gain had resulted from his commingling of funds in his trust account, the return of a trust account check for insufficient funds, and his failure to comply with trust account record-keeping requirements. We lifted that suspension after four months in response to the referee's recommendation, which was based on an agreement between Attorney Raymonds and the Board concerning action Attorney

Raymonds had taken to ensure compliance with the trust account rules.

¶ 4. The facts found by the referee in this proceeding, the Honorable Robert T. McGraw, Reserve Judge, as well as other facts of record, are not disputed by the parties in this appeal. Attorney Raymonds is a sole practitioner and employed two, sometimes three, secretaries. His practice consisted almost exclusively of the representation of parties in real estate transactions, particularly lenders. Tens of millions of dollars in closing proceeds went through his trust account, and thousands of checks were written on that account monthly.

¶ 5. In February 1995, despite having deposited sufficient funds from real estate closings to pay six separate disbursements by check from the trust account, there were insufficient funds in the account to pay those checks when they were presented for payment. The bank covered and honored five of those checks but returned a $28,000 check with a notation that it be returned to the maker as a result of insufficient funds in the account.

¶ 6. During the Board's investigation, Attorney Raymonds asserted to Board staff that the reason for the shortfall was bank services charges and that the shortfall was in the amount of approximately $30,000. However, the service charges imposed between 1993 and 1995 accounted for only $30,000 of the shortfall; the $100,000 balance has never been explained. He also stated that no check written on his trust account ever had been returned because of insufficient funds.

¶ 7. Attorney Raymonds was aware since 1993 that the bank was imposing service charges and deducting them from his trust account, up to the time he moved it to another bank in May 1995. Thus, Attor-

ney Raymonds allowed funds being held in trust to be used by the bank for payment of service charges for more than two years. The reason he gave for not moving the account sooner was his fear that the bank would demand payment of a $200,000 personal loan he had obtained from it.

¶ 8. After the shortfall was discovered, Attorney Raymonds borrowed $150,000 from his sister and deposited it into his trust account to cover the shortfall, thereby commingling his own funds with funds belonging to clients and third parties. It was from that deposit that the $28,000 check that had been dishonored ultimately was paid. That commingling continued when he closed the trust account in May 1995 and opened one in another bank, transferring to it the balance of approximately $21,000 of his personal funds that had not been disbursed to clients and third parties.

¶ 9. Although the referee did not cite in his report the specific Rules of Professional Conduct for Attorneys that Attorney Raymonds' misconduct violated, the Board correctly asserted that his allowing the trust account to become overdrawn on several occasions in February 1995 constituted a failure to hold property of clients or third persons in trust, thereby violating SCR 20:1.15(a).[1] His deposit of the $150,000 loan from his

---

[1] SCR 20:1.15(a) provides:

(a) A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and third persons that is in the lawyer's possession in connection with a representation or when acting in a fiduciary capacity. Funds held in connection with a representation or in a fiduciary capacity include funds held as trustee, agent, guardian, personal representative of an estate, or otherwise. All funds of clients and third persons paid to a lawyer or law firm shall be deposited in one or more identifiable trust accounts as provided in paragraph (c). The trust account shall be maintained in a bank, savings bank, trust company, credit union,

sister into the trust account constituted a failure to hold property of clients or third persons separate from his own property, also in violation of SCR 20:1.15(a).

¶ 10. Attorney Raymonds' conduct also violated the following professional conduct rules. His failure to maintain complete records of trust account funds, including a monthly schedule of subsidiary client ledgers indicating the actual balance of each client's account, and his failure to reconcile his trust account checkbook with his monthly bank statements violated SCR 20:1.15(e).[2] His trust account typically handled

savings and loan association or other investment institution authorized to do business and located in Wisconsin. The trust account shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. No funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay or avoid imposition of account service charges, may be deposited in such an account. Unless the client otherwise directs in writing, securities in bearer form shall be kept by the attorney in a safe deposit box in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The safe deposit box shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. Other property of a client or third person shall be identified as such and appropriately safeguarded. If a lawyer also licensed in another state is entrusted with funds or property in connection with an out-of-state representation, this provision shall not supersede the trust account rules of the other state.

[2] SCR 20:1.15(e) provides:

(e) Complete records of trust account funds and other trust property shall be kept by the lawyer and shall be preserved for a period of at least six years after termination of the representation. Complete records shall include: (i) a cash receipts journal, listing the sources and date of each receipt, (ii) a disbursements journal, listing the date and payee of each disbursement, with all disbursements being paid by check, (iii) a subsidiary ledger containing a separate page for each person or company for whom funds have been received in trust, showing the date and amount of each

very large sums of money—as much as $51,600,000 in November 1993. Until 1991 or 1992, he maintained information as to amounts received from lenders and borrowers and amounts disbursed from those deposits on separate index cards for each real estate transaction. Thereafter, he used a computer program to enter receipts and disbursements such that each transaction was balanced to zero before the next transaction was entered. He did not, however, use the checkbook-balancing feature of that computer program on a monthly basis. Thus, resulting cards and records did not show each client's actual unexpended balance at the end of each month. As a consequence, when time passed before the disbursements cleared his trust account, the balance in that account was directly attributable to many different clients but not reflected on their individual records.

¶ 11. During the course of this proceeding but only after we temporarily suspended his license to practice law, Attorney Raymonds took appropriate remedial steps to prevent further trust account errors, including hiring a person to oversee the trust account and creating a system of checks and balances recommended by the auditor. He took that action in

receipt, the date and amount of each disbursement, and any unexpended balance, (iv) a monthly schedule of the subsidiary ledger, indicating the balance of each client's account at the end of each month, (v) a determination of the cash balance (checkbook balance) at the end of each month, taken from the cash receipts and cash disbursement journals and a reconciliation of the cash balance (checkbook balance) with the balance indicated in the bank statement, and (vi) monthly statements, including canceled checks, vouchers or share drafts, and duplicate deposit slips. A record of all property other than cash which is held in trust for clients or third persons, as required by paragraph (a) hereof, shall also be maintained. All trust account records shall be deemed to have public aspects as related to the lawyer's fitness to practice.

December 1999, shortly before the Board agreed to the lifting of the temporary suspension.

¶ 12. The referee concluded that Attorney Raymonds' lack of candor in the Board's investigation constituted professional misconduct, which the Board asserted was in violation of SCR 20:8.1(b)[3] as a failure to disclose a fact necessary to correct a misapprehension known to have arisen and SCR 22.07(2)[4] as a failure to disclose fully and fairly all facts and circumstances pertaining to an investigation. In that respect, Attorney Raymonds misled the Board concerning the amount of his own funds he deposited in his trust account, implying that it was only an amount sufficient to cover the approximately $30,000 of bank service charges, when in fact it was $150,000. He also led the Board to believe that no check written on his trust

---

[3] SCR 20:8.1(b) provides:

An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

[4] Former SCR 22.07(2), applicable in the instant proceeding, provided:

(2) During the course of an investigation, the administrator or a committee may notify the respondent of the subject being investigated. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct or medical incapacity within 20 days of being served by ordinary mail a request for response to a grievance. The administrator in his or her discretion may allow additional time to respond. Failure to provide information or misrepresentation in a disclosure is misconduct. The administrator or committee may make a further investigation before making a recommendation to the board.

account ever had been returned for insufficient funds, when there had been at least one, in the amount of $28,463.74. He also was less than forthright with the Board when he stated that he had borrowed the $150,000 from "a family friend," when in fact it was his sister.

¶ 13. The Board asserted that the referee in effect also concluded that Attorney Raymonds engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c),[5] by allowing bank service fees for which he was personally liable to be paid from funds of clients and others held in trust, by making misrepresentations to Board staff about the amount of his own money he deposited into the trust account, and by his repeated statement that there never had been an overdraft on his trust account.

¶ 14. As discipline for that misconduct, the referee recommended that Attorney Raymonds receive a private reprimand and be required to report to the Board quarterly for one year his continuation of the remedial trust account practices he had instituted during the course of the instant proceeding. That recommendation appeared to have been based on the referee's assessment that no client or third person suffered any loss because of Attorney Raymonds' misconduct and that Attorney Raymonds did not gain personally from it. The referee also took into account as a mitigating factor that Attorney Raymonds instituted remedial procedures to protect against further trust account errors. The referee acknowledged, however, that Attorney Raymonds' failure to reconcile his trust

---

[5] SCR 20:8.4(c) provides:

It is professional misconduct for a lawyer to:
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

account monthly "create[d] dangerous possibilities as evidenced by the unexplained $100,000 shortage in the account. . ." and that those funds remained missing and unaccounted for.

¶ 15. In this appeal, the Board argued that the serious nature of Attorney Raymonds' professional misconduct warrants discipline more severe than that recommended by the referee. He allowed trust account funds to be used by his bank to pay service charges on that account that were his own business expense, and he did so knowingly. Moreover, he intentionally refrained from moving his trust account to another bank promptly upon learning of the deduction of service charges because he believed his current bank would demand payment of a personal loan. Even when he no longer was liable on that loan in 1994, he did not move the account until May of the following year.

¶ 16. In addition, even though aware that there would be a shortfall in his trust account, if only by virtue of the bank's deduction of service charges, Attorney Raymonds never attempted to ascertain the extent of that shortfall by balancing his checkbook or reconciling subsidiary client ledgers. Indeed, he did nothing to remedy the inevitable shortfall until one of his trust account checks was dishonored. The Board pointed to the large amount of money he borrowed to cover the unascertained shortfall as an indicia of the seriousness of his misconduct. The Board also viewed as serious misconduct his continuing the commingling of his personal funds with funds held in trust when he transferred his trust account to another institution while it held some $21,000 of his personal funds.

¶ 17. Contrary to the referee's assertions, the Board contended that some of Attorney Raymonds' clients and third persons were harmed by the misconduct

and that Attorney Raymonds did gain personally from it. His trust account had a negative balance on two days in 1995, and a $28,000 check written on the account did not clear until a week after it had been dishonored. At the least, the Board asserted, that overdraft cost the payee lost interest, even if a minimal amount, as well as the additional inconvenience of redepositing the check for collection. Further, if the bank had not paid four other checks despite the overdrawn status of the trust account, additional persons would have been harmed. Moreover, Attorney Raymonds gained from his misconduct by having the funds of clients and others used to pay his own liability for bank service charges on his trust account.

¶ 18. While acknowledging the mitigating factors of Attorney Raymonds' replacement of funds prior to the Board's investigation into his conduct, his remedial steps to maintain appropriate trust account records and comply with the trust account rules, and the absence of prior discipline, the Board asserted as an aggravating factor that Attorney Raymonds' handling of his trust account and dealing with the property of clients and others was not negligent but intentional. His was a knowing failure to protect funds he held in trust. In the Board's view, the fact that Attorney Raymonds was able to borrow a substantial amount of money to cover the trust account shortfall, the amount of which he never knew, does not mitigate the serious potential for loss to which the owners of those funds were exposed. In respect to his remedial steps in trust account procedure, the Board noted that he took those measures only after his license to practice law was suspended temporarily.

¶ 19. The Board argued that the appropriate response to Attorney Raymonds' professional miscon-

duct is a 90-day license suspension and the imposition of the following conditions on his continued practice following the suspension. Attorney Raymonds should be required to comply fully with the trust account rules, report that compliance quarterly to the Board for a period of at least two years, provide the Board access to underlying records to corroborate those reports, and attend, with his staff, appropriate continuing legal education programs dealing with trust account procedure.

¶ 20. We agree with the Board's assessment of the seriousness of Attorney Raymonds' professional misconduct and determine that a 90-day license suspension and the imposition of the conditions proffered by the Board are the appropriate response to it. We do not, however, accept the Board's suggestion that we consider "crediting" the 90-day license suspension with that portion — 69 days — of the 131-day temporary license suspension previously imposed in the course of this proceeding during which Attorney Raymonds came into and remained in compliance with the trust account record-keeping requirements. That temporary license suspension was unrelated to the professional misconduct addressed in the disciplinary proceeding; it was imposed specifically for Attorney Raymonds' failure to comply with the referee's order for an audit of his trust account to address specified issues.

¶ 21. We are unpersuaded by Attorney Raymonds' attempt to justify the imposition of a private reprimand recommended by the referee. He minimized the seriousness of his misrepresentations to the Board by asserting that he had estimated accurately the amount of bank service charges for which he deposited borrowed funds, apparently contending that he was under no obligation to tell the Board the full

amount of his own funds he deposited to cover the unascertained shortfall. His insistence on a distinction between a check returned with the notation "refer to maker" and one marked "insufficient funds" is disingenuous. So, too, is his assertion that there is "an unequivocal distinction" between his allowing bank service charges to be deducted from funds belonging to clients and others and removing funds from a trust account and converting them to his own personal or business use. To his credit, however slight, he did acknowledge that the latter is "serious misconduct."

¶ 22. IT IS ORDERED that license of Daniel J. Raymonds to practice law in Wisconsin is suspended for 90 days, commencing November 30, 2000, as discipline for his professional misconduct established in this proceeding.

¶ 23. IT IS FURTHER ORDERED that upon reinstatement of his license to practice law, Daniel J. Raymonds comply with the conditions recommended by the Board of Attorneys Professional Responsibility in this proceeding.

¶ 24. IT IS FURTHER ORDERED that within 60 days of the date of this order, Daniel J. Raymonds pay to the Office of Lawyer Regulation the costs of this proceeding, provided that in the event the costs are not paid within the time specified and absent a showing to this court in writing of his inability to pay the costs within that time, the license of Daniel J. Raymonds to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 25. IT IS FURTHER ORDERED that Daniel J. Raymonds comply with the provisions of SCR 22.26

concerning the duties of a person whose license to practice law in Wisconsin has been suspended.