IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Robert J. URBAN, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Robert J. URBAN, Respondent.

Supreme Court

*No. 02–0877–D. Decided June 20, 2002.*

2002 WI 63

(Also reported in 645 N.W.2d 612.)

¶ 1. PER CURIAM. We review the stipulation filed by Attorney Robert J. Urban and the Office of Lawyer Regulation (OLR)[1] incorporating by reference the allegations of a disciplinary complaint filed against Attorney Urban by OLR. The parties ask this court to adopt the factual findings and conclusions of law of misconduct as recited in that complaint and impose a 15–month suspension of Attorney Urban's license to practice law in this state.

¶ 2. The acts of misconduct as charged in the OLR complaint and now admitted by Attorney Urban in the stipulation, involve handling of an estate after a malpractice claim on behalf of the estate's beneficiary arose against him. The OLR complaint also charged Urban with knowingly making misrepresentations to the probate court and misleading the court as to the status of tax refund negotiations on behalf of an estate; failing to withdraw from the representation of an estate when the conflict of interest arose; failing to include the

---

[1] Effective October 1, 2000, Wisconsin's attorney disciplinary process underwent a substantial restructuring. The name of the body responsible for investigating and prosecuting cases involving attorney misconduct was changed to the Office of Lawyer Regulation (OLR) and the supreme court rules applicable to the lawyer regulation system were also revised. Although some of the conduct giving rise to this case occurred prior to October 1, 2000, the OLR was the investigative body that filed this disciplinary complaint. References to supreme court rules in this opinion will be to those currently in effect unless specifically noted.

estate in a list provided to the OLR in connection with a previously imposed disciplinary order directing OLR to monitor Attorney Urban's compliance with certain conditions; failing to respond to OLR's investigative inquiry in connection with another estate; and, failing to disclose to OLR that he was handling estate assets in two different probate cases.

¶ 3. We approve the stipulation and determine that the seriousness of Attorney Urban's misconduct warrants the suspension of his license to practice law for 15 months. We further condition any future reinstatement of his license upon him demonstrating that he has completed his payment obligations under a settlement agreement he has entered into with the beneficiary in one of the estates.

¶ 4. Attorney Urban was licensed to practice law in Wisconsin in 1958 and practices in Milwaukee. He has previously been disciplined for misconduct: In 1984 he was publicly reprimanded for his lack of diligence in the probate of an estate and his failure to respond to the Board of Attorneys Professional Responsibility (BAPR), OLR's predecessor, during its investigation. *Disciplinary Proceedings Against Urban,* 119 Wis. 2d 889, 350 N.W.2d 138 (1984). In 1987 BAPR privately reprimanded him, with his consent, for his failure to forward files to a client despite numerous requests for them, failure to notify the client of the receipt of funds belonging to the client, and failure to respond promptly to BAPR's inquiries into the matter. Then, effective April 27, 1998, this court suspended Urban's license for six months for his misconduct consisting of his failure to act with reasonable diligence and promptness in handling four probate estates, his numerous misrepresentations to the probate court of the causes for his continued failure to complete one of those estates in a

timely fashion, and his failure to cooperate with BAPR during its investigation of his conduct. In addition to the six-month suspension, this court ordered that following reinstatement of his license, Urban must periodically for two years file with BAPR a list of probate matters that he had pending in any court, along with pertinent information concerning those matters. *Disciplinary Proceedings Against Urban,* 216 Wis. 2d 462, 574 N.W.2d 651 (1998).

¶ 5. One of the four probate matters involved in that 1998 disciplinary suspension was the Estate of Carolyn Flicek; that estate is again one of the focuses of the current disciplinary complaint against Urban. Urban was appointed personal representative of that estate on March 8, 1990, and has also served as attorney of record for that estate. The sole heir of the Flicek Estate is the deceased's daughter, Carol Ann Stratmeyer (Stratmeyer).

¶ 6. When BAPR completed its 1996 investigation concerning Urban's misconduct in the Flicek Estate, that estate remained open; it was still open when this court issued its 1998 disciplinary order suspending Urban's license for six months. Urban's misconduct regarding the Flicek matter that led to the six-month suspension of his license consisted of his failure to timely file the inventory until approximately five months after the statutory deadline even though he had the necessary documentations to file it in a timely manner; in addition, on 11 occasions between December 13, 1990, and February 8, 1996, he misrepresented to the probate court that there were ongoing disputes with the federal and state taxing authorities and, on one occasion, he told the court that there was a tax refund pending despite the fact that Urban had never

communicated with the Wisconsin Department of Revenue regarding the Flicek Estate.

¶ 7. In the instant disciplinary complaint filed by OLR against Urban it is alleged that after Urban's license to practice law was reinstated following his six-month suspension, this court conditioned that reinstatement upon his continuing compliance with certain requirements including: that every 90 days for a period of two years he must file with BAPR (now OLR) a list of all probate matters he had pending in any court, listing also the dates on which they were opened and listing all probate matters closed during the preceding 90–day period; he was also required to file a satisfactory explanation as to why any estate remained open for more than 18 months, and an estimate of when that estate would be closed; in addition, he was required to submit to BAPR on a quarterly basis, his trust account records.

¶ 8. The OLR's current complaint, to which Urban has stipulated, alleges that on September 28, 1990, Urban remitted a federal estate tax tender of $210,000 to the Internal Revenue Service on behalf of the Flicek Estate. Over six years later, on November 1, 1996, Urban filed a federal estate tax return indicating that a refund of $84,007.94 was owed to the estate. However, when the IRS issued the closing letter for the Flicek Estate on June 3, 1997, that letter reflected that the federal estate tax totaled only $109,767.06 which was $100,232.94 less than the $210,000 Urban had tendered on behalf of the estate in September 1990. Urban did not inquire about a refund after he received the IRS estate closing letter.

¶ 9. During the subsequent ten months between June 1997 and April 1998, while Urban continued as the attorney for the Flicek Estate, he did not seek a refund of the overpayment of the federal estate tax.

198

After his license was suspended for six months on April 27, 1998, Urban continued to act as personal representative for the Flicek Estate appearing at order to show cause hearings regarding that estate until October 8, 1998, when a stipulation and order was filed substituting Attorney Gregory Hays for Urban as the attorney of record for the Flicek Estate.

¶ 10.  Attorney Hays wrote to the IRS that Urban, as personal representative of the estate, had retained him regarding the $84,007.94 refund Urban claimed was owed to the estate. The IRS responded that no refund could now be made because the tax code limits refunds to those amounts paid within three years preceding a refund request. The IRS noted that the estate tax return by Urban for the Flicek Estate in November of 1996 requested a tax refund; however, because the tax for that estate had been tendered to and received by the IRS in 1990—over six years before the claim for a refund was made—the IRS wrote that no refund could now be made in either the $84,007.94 amount Urban first requested, or for $100,232.94, which was the amount identified as the overpayment in the IRS's estate tax closing letter in June 1997.

¶ 11.  The current OLR complaint also alleges, and Urban has now stipulated, that as a result of his handling of the federal estate taxes for the Flicek Estate, the estate lost a tax refund in either the amount of $84,007.94 or $100,232.94.

¶ 12.  Urban subsequently retained another attorney to assist him in obtaining the estate tax refund from the IRS for the Flicek Estate; however, that attorney, after investigation, advised Urban that it was not likely that a claim for a refund could be successfully pursued.

¶ 13. The OLR complaint alleges, and Urban now stipulates, that for the next 15 months until November of 2001, Urban took no steps to pursue the refund nor did he disclose to Ms. Stratmeyer, the Flicek Estate's sole heir, or the probate court, that the IRS had refused to make a refund.

¶ 14. The OLR complaint alleges, and Urban now stipulates, that in November of 2001, OLR staff asked Urban if he had notified Ms. Stratmeyer of the estate's potential malpractice claim against Urban for his mishandling of the estate tax refund matter. Urban then contacted Ms. Stratmeyer and told her for the first time that there was a potential malpractice claim against him for his handling of the tax refund matter for the estate. Urban also told Ms. Stratmeyer that she could consult another attorney about the issue but that he preferred to resolve the issue between them and that to do so he would give her a promissory note. Urban did not tell Ms. Stratmeyer that he had no malpractice insurance coverage.

¶ 15. The OLR complaint also alleges, and Urban stipulates, that during that same period, Urban attended various hearings in the probate court regarding the Flicek Estate and repeatedly advised the court: that the tax refund claim was the only asset that needed to be resolved in the estate; that he had obtained counsel to process the refund claim; and, that he believed a settlement with the IRS had been worked out and a final receipt and judgment in the estate would be forthcoming shortly. Urban repeated similar statements to the probate court over the next several months culminating in the probate court on November 28, 2001, issuing an order requiring Urban to show cause why he should not be removed as a personal representative of the Flicek Estate. Ultimately, Urban

was not removed as personal representative but he was ordered to produce a supplemental final account for the estate updating the information contained in the final account he had filed on behalf of the estate in 1992.

¶ 16. While these matters were developing, in early 2000, BAPR staff sent Urban a letter reminding him that he was required to comply with the various conditions that had been imposed when the court reinstated his license to practice law after the six-month suspension. As noted, those conditions required Urban to periodically file information with BAPR including a list of all probate matters pending, the dates those matters were opened and all matters that had been closed, and an explanation as to why any estate Urban was handling had remained open for more than 18 months.

¶ 17. In February 2000 Urban responded to the letter from BAPR staff asserting that since his reinstatement in April 1999 he had only opened one probate matter, the Estate of Orville Stewart. In his letter to BAPR Urban did not disclose that he was still handling the Flicek Estate; consequently, Urban provided no explanation to BAPR regarding why the Flicek Estate had remained open for approximately ten years by that point.

¶ 18. The OLR complaint alleges, and Urban now stipulates, that in the six reports he submitted to BAPR/OLR between February 2000 and August 2001 he never disclosed that he was still handling the Flicek Estate and that it remained open.

¶ 19. On August 31, 2001, OLR staff discovered that Urban remained the attorney of record in the Flicek Estate. The OLR staff then contacted Urban asking for an explanation as to why he had not disclosed to OLR that he was still handling the Flicek Estate; he

was also asked to provide a detailed report on the current status of that estate. The OLR also requested that Urban explain why he had not disclosed to the OLR that in December 2000 the probate court had issued an order requiring him to show cause relating to the Stewart Estate he was then handling.

¶ 20. Urban responded that he did not believe the reporting requirement imposed on him as a condition of license reinstatement applied to the Flicek Estate because he thought the condition was prospective only. Although he acknowledged that the probate court had issued an order to show cause in the Stewart Estate in December 2000 Urban did not explain why he had not disclosed that information to BAPR/OLR in any of the six reports he had filed.

¶ 21. The OLR complaint further alleges, and Urban now stipulates, that in his quarterly reports to BAPR/OLR submitted to comply with the conditions imposed for reinstatement, Urban had asserted that he was not handling funds relating to probate matters and that any funds he had received had been deposited into estate accounts and handled by the respective personal representatives directly. Urban did not report that as the personal representative in both the Flicek and Stewart Estates, he controlled the respective checking accounts for those estates.

¶ 22. The OLR complaint asserts six specific professional misconduct counts against Urban including:

### COUNT ONE

By representing the Flicek Estate while the estate had a potential malpractice claim against him, Urban represented a client when that representation was materially limited by his responsibilities to another client or a third person, or by his own interests, in violation of SCR 20:1.7(b).

## COUNT TWO

By failing to withdraw as the attorney for the Flicek estate after a conflict of interest arose, Urban failed to withdraw from representation of a client in a situation where the continued representation resulted in a continuing violation of the Rules of Professional Conduct, in violation of SCR 20:1.16(a)(1).

## COUNT THREE

By misrepresenting to the probate court on multiple occasions that he was expecting a tax refund from the IRS, and by repeatedly misleading the court regarding the status of negotiations with the IRS, Urban knowingly made false statements of fact to a tribunal, in violation of SCR 20:3.3(b), and Urban engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c).

## COUNT FOUR

By failing to list the Estate of Carolyn Flicek as a probate matter he was handling in response to BAPR's request for a "list of all probate matters that [he had] pending in any court," Urban failed to disclose a fact necessary to correct a misrepresentation known by Urban to have arisen in the matter, or knowingly failed to respond to a lawful demand for information from a disciplinary authority, in violation of SCR 20:8.1(b), and engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c).

## COUNT FIVE

By failing to respond to OLR's inquiry as to whether an order to show cause had been issued in the Stewart Estate, Urban failed to disclose the fact necessary to correct misapprehension known by Urban to have

arisen in the matter, or knowingly failed to respond to a lawful demand for information from a disciplinary authority, in violation of SCR 20:8.1(b), and engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of SCR 20:8.4(c).

## COUNT SIX

By advising BAPR/OLR, while he was subject to its supervision, that estate funds were being handled by the personal representatives of the estate that he was probating, yet failing to disclose that he was the personal representative for those two estates, Urban failed to disclose a fact necessary to correct a misapprehension known by Urban to have arisen in the matter, or knowingly failed to respond to a lawful demand for information from a disciplinary authority, in violation of SCR 20:8.1(b), and engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of SCR 20:8.4(c).

¶ 23. The stipulation between Attorney Urban and OLR reports that Urban's misconduct has been somewhat mitigated in that the Flicek Estate's claim for the tax refund was assigned to the sole heir, Ms. Stratmeyer, who then retained independent counsel. That counsel has verified that Ms. Stratmeyer's claim has been satisfied pursuant to a settlement agreement between Urban and Ms. Stratmeyer under which Attorney Urban made an $88,000 payment to Ms. Stratmeyer in February of 2002 and has given her a $12,000 personal promissory note to be paid by him by December 31, 2003.

¶ 24. We adopt the findings of fact and conclusions of law set forth in the parties' stipulation. Attorney Urban has engaged in serious misconduct warranting suspension of his license to practice law. We believe that Attorney Urban's pattern of misconduct relating to

probate matters, especially his pattern of continued misrepresentations to the probate court in the Flicek Estate even though he had previously been disciplined for making similar misrepresentations to the probate court regarding the very same estate, warrants a substantial period of suspension of his license to practice law in this state. Accordingly,

¶ 25. IT IS ORDERED that the license of Robert J. Urban to practice law in Wisconsin is suspended for 15 months effective July 25, 2002.

¶ 26. IT IS FURTHER ORDERED that within 60 days of the date of this order Robert J. Urban pay to the Office of Lawyer Regulation the costs of this proceeding, provided that in the event the costs are not paid within the time specified and absent a showing to this court in writing of his inability to pay the costs within that time, the license of Robert J. Urban to practice law in Wisconsin shall remain suspended until further order of this court.

¶ 27. IT IS FURTHER ORDERED that any subsequent reinstatement of Robert J. Urban's license to practice law in this state is conditioned upon a showing that he has complied with and completed his obligations under the settlement agreement he has reached with the heir in the Flicek Estate.

¶ 28. IT IS FURTHER ORDERED that Robert J. Urban comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.