IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Jeffrey A. REITZ, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Respondent,

v.

Jeffrey A. REITZ, Respondent-Appellant.

Supreme Court

*No. 2003AP2518–D. Oral argument February 8, 2005.—Decided
April 14, 2005.*

2005 WI 39

(Also reported in 694 N.W.2d 894.)

 

For the respondent-appellant there was a brief by *Jeffrey A. Reitz,* Milwaukee, and oral argument by *Jeffrey A. Reitz.*

For the complainant-respondent there was a brief by *Gregg Herman, Matthew J. Price* and *Loeb & Herman, S.C.,* Milwaukee, and oral argument by *Gregg M. Herman.*

¶ 1. PER CURIAM. Attorney Jeffrey A. Reitz (hereafter Reitz or respondent) has appealed from the referee's report including findings of fact and conclusions of law filed in this court on June 14, 2004. After a public hearing, the referee, Rose Marie Baron, determined that the Office of Lawyer Regulation (OLR) had presented clear, satisfactory, and convincing evidence to establish all 13 counts of professional misconduct arising from Reitz's representation of six different clients as alleged in a complaint OLR filed in this court against Reitz on September 24, 2003. The referee recommended that Reitz's license to practice law in this state

be suspended for six months for this professional misconduct and that he pay the costs of this proceeding now totaling $7735.62.

¶ 2. Reitz's appeal challenged the referee's findings with regard to only four of the counts relating to three clients; then at oral argument before this court, Reitz conceded one of those counts. Consequently, he now challenges the referee's findings and conclusions with respect to only three of the misconduct counts. However, Reitz also challenges the referee's recommendation that his license to practice law should be suspended for a period of six months. Reitz contends that a more appropriate sanction would be a license suspension for a period of two to four months.

¶ 3. The referee's findings of fact are to be affirmed unless they are clearly erroneous. *In re Disciplinary Proceedings Against Sosnay,* 209 Wis. 2d 241, 243, 562 N.W.2d 137 (1997). However, no deference is granted to the referee's conclusions of law which we review de novo. *In re Disciplinary Proceedings Against Carroll,* 2001 WI 130, ¶ 29, 248 Wis. 2d 662, 636 N.W.2d 718. After our review of the record in this matter, we conclude that the referee's findings of fact are not clearly erroneous; accordingly we affirm and adopt them. However, we disagree with the referee's legal conclusion that Reitz's conduct as alleged in Count II of the complaint amounted to a violation of a rule of conduct for lawyers. Therefore, we adopt the referee's findings of fact and all of her conclusions of law except for Count II. And we determine that an appropriate sanction for his 12 counts of misconduct is a suspension of Reitz's license to practice in this state for a period of five months. But we agree with the referee's recommen-

dation that Reitz be required to pay all the costs of these disciplinary proceedings.

¶ 4. Jeffrey A. Reitz was admitted to practice law in this state in 1981 and currently practices in Milwaukee. He has never before been the subject of a disciplinary action.

¶ 5. The six separate client matters which gave rise to the 13 counts of misconduct as alleged by the OLR in its complaint will be briefly summarized and discussed.[1]

## CLIENT N.C.—COUNTS I, II AND III

██

¶ 6. In March 1998, N.C. retained Attorney Michael D. Mandelman to represent her in a legal malpractice action against the attorney who had previously represented her in a child custody proceeding. In June 1998, Mandelman filed a lawsuit against that attorney in Walworth County circuit court.

¶ 7. On March 1, 1999, Mandelman and Reitz formed a law partnership, Reitz & Mandelman, LLC. Reitz had extensive experience preparing cases for trial but had limited trial experience; consequently, his role

---

[1] Effective October 1, 2000 Wisconsin's attorney disciplinary process was substantially restructured. The name of the body responsible for investigating and prosecuting cases involving attorney misconduct was changed from the Board of Attorneys Professional Responsibility (BAPR) to the Office of Lawyer Regulation (OLR), and the supreme court rules applicable to lawyer regulation were also revised in part. Some of the conduct underlying this case arose prior to October 1, 2000. However, all references to supreme court rules will be to the current version of the rules unless otherwise noted.

in the new firm was to prepare cases for trial and Mandelman was to handle settlement negotiations, depositions, and trials.

¶ 8. On March 22, 1999, N.C. wrote to Mandelman seeking information about the status of her malpractice action. N.C. noted that she had not heard from Mandelman and wrote that she wanted to be kept up-to-date. N.C. also reminded Mandelman that he had earlier informed her that depositions were soon to start, but she complained that so far nothing had been done.

¶ 9. On April 15, 1999, Reitz wrote to N.C. advising her that he would now be her attorney; Reitz explained that he would consult with Mandelman who would still handle court appearances and litigation.

¶ 10. On May 11, 1999, the attorney representing the defendant in the malpractice action forwarded interrogatories and a request for production of documents to Reitz to be completed within 30 days.

¶ 11. After three months elapsed without complete responses to the interrogatories, the attorney representing the malpractice defendant moved to dismiss the action. After a hearing, the circuit court denied that motion to dismiss but sanctioned N.C. for discovery violations and ordered her to pay $300 to the defendant's attorney. The circuit court also ordered N.C. to provide the defense attorney with full and fair responses to his discovery requests, and limited the documents upon which N.C. could rely or introduce as evidence at the malpractice trial.

¶ 12. Subsequently, in October 1999, after additional correspondence between Reitz and the defense attorney, Reitz suggested the names of five expert witnesses whom he might call on N.C.'s behalf at trial. He asserted in his cover letter to the defense attorney that the list was "not as thorough in descriptions" as he

would like, and that it would be narrowed within the next week. Reitz subsequently told N.C. that the firm would pay the $300 sanction that had been imposed against her; he also informed her that one of the experts he had named was refusing to testify voluntarily.

¶ 13. N.C. told Reitz that she did not want to settle her case and inquired about depositions of the experts. She, along with the defense attorney, questioned the lack of clarity regarding the experts Reitz actually planned on calling. On November 11, 1999, N.C. wrote to Reitz asking for a list of the experts he had named on her behalf.

¶ 14. On November 15, 1999, Reitz filed a motion seeking to withdraw as N.C.'s counsel on the ground that N.C. had not paid some of his legal bills; he also asserted that there had been a communication breakdown between him and N.C. The defense attorney objected to Reitz's late withdrawal request. The circuit court subsequently denied Reitz's motion to withdraw as N.C.'s counsel.

¶ 15. Defense counsel thereafter wrote to Reitz setting a deadline for Reitz to provide a list of experts, the responses to the interrogatories, and the experts' reports which were then two months overdue. Reitz did not respond to that letter. The defense attorney then moved to dismiss N.C.'s legal malpractice action for failure to comply with discovery orders and to provide necessary expert opinions to support her malpractice claim. The hearing on that motion to dismiss was scheduled for January 18, 2000.

¶ 16. Reitz then scheduled the malpractice defendant's deposition for January 14, 2000 at the Reitz & Mandelman offices. Immediately before that deposi-

tion was scheduled to begin, Reitz met with N.C. at his office and had her sign the following release he had just drafted:

RELEASE OF MICHAEL MANDELMAN

I, [N.C.], understand that Michael Mandelman has not recently been working on my case against [the defendant] and has agreed to do the deposition of [the defendant] January 14, 2000, only on condition that this release, waiver and authorization is executed. I am providing Mr. Mandelman with information regarding my case this date and with questions that I wish him to ask of [the defendant] at the deposition. I hereby authorize Mr. Mandelman to conduct this deposition and release Michael D. Mandelman from any claims that I may have against him for whatever reason relating to any matters that he has worked on for me, hereby waiving the same. I have at this time no intention of filing any complaint, grievance, lawsuit or any other action with anybody against Michael D. Mandelman. I wish for Michael D. Mandelman to conduct this deposition of [the defendant] understand [sic] that this statement is necessary so that he can proceed with my claim with the confidence necessary that he has my support in this matter.

¶ 17. At Reitz's disciplinary hearing before Referee Baron, N.C. testified that Reitz informed her that if she did not sign this release, the defendant's deposition would not take place and that she would lose her malpractice case. N.C. further testified—and it is not now disputed—that she had not been advised by Reitz that she had a right to seek independent counsel before executing this release. After N.C. signed the release, Mandelman conducted the defendant's deposition.

¶ 18. Subsequently, at the January 18th hearing in circuit court, Reitz filed a brief in opposition to the defendant's motion to dismiss. Reitz argued that N.C.

558

should be allowed to proceed with her malpractice claim even without an expert witness. The circuit court disagreed and dismissed N.C.'s case with prejudice and with costs, noting that N.C. could not prove her malpractice action without an expert witness, and that Reitz had failed to identify any expert who was willing to testify with respect to the defendant's alleged legal malpractice.[2]

¶ 19. This course of conduct led to the first three counts of misconduct as alleged in OLR's complaint and as found by the referee. Reitz concedes Counts I and III and only challenges Count II.

- Count I—By failing to respond to discovery demands and by failing to obtain an expert witness, Reitz failed to act with reasonable diligence and promptness in representing N.C., in violation of SCR 20:1.3.[3]

- Count II—By having N.C. sign a document entitled "Release of Michael Mandelman" Reitz made an agreement on behalf of his partner, Michael Mandelman, prospectively limiting Mandelman's liability for malpractice to N.C., who was not independently represented by counsel in making the agreements, in violation of SCR 20:1.8(h).[4]

---

[2] N.C. later reached a settlement agreement with that malpractice defendant. She agreed to waive her right to appeal the dismissal and in return, that defendant agreed to waive his costs and any unpaid legal fees N.C. still owed him as a result of the early custody case.

[3] SCR 20:1.3 states: "Diligence. A lawyer shall act with reasonable diligence and promptness in representing a client."

[4] SCR 20:1.8(h) Conflict of interest: prohibited transactions.

559

- Count III—By having N.C. sign a document that prospectively limited Mandelman's liability for malpractice to N.C., who was not independently represented by counsel in making the agreement, Reitz knowingly assisted another attorney in violating the Rules of Professional Conduct, in violation of SCR 20:8.4(a).[5]

¶ 20. Referee Baron found that OLR had proven by "clear and satisfactory evidence"[6] that Reitz had violated SCR 20:1.3 as alleged in Count I of OLR's complaint by failing to act with reasonable diligence and promptness in representing N.C. According to the referee, Reitz's inability to designate expert witnesses was an example of his lack of diligence and promptness because the record demonstrated that he had not followed the usual practice of obtaining a summary from

(h) A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement, or settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.

[5] SCR 20:8.4(a) states: "Misconduct. It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another."

[6] In her report, the referee repeatedly states that OLR had proven the allegations by "clear and satisfactory" evidence. Pursuant to SCR 22.16(5), however, the OLR has the burden of demonstrating by "clear, satisfactory and convincing" evidence that the respondent has engaged in misconduct. Reitz raises no issue about the referee's truncated statements concerning OLR's burden of proof. This court concludes that the referee's findings were not clearly erroneous and were thus all supported by the requisite burden of proof of clear, satisfactory, and convincing evidence.

the witnesses he had identified, nor had he even personally contacted them. The referee also noted that it was not until after the defense counsel began pressuring Reitz about the experts' reports, that Reitz discovered that the experts he had listed were unwilling to testify voluntarily. The referee also pointed out that Reitz acknowledged that he first became aware of the case law holding that expert witnesses cannot be made to testify involuntarily. Based on this, the referee concluded that Reitz had failed to live up to his professional responsibility for diligence and promptness in preparing N.C's case for trial. Reitz does not now challenge the referee's findings and conclusions with respect to Count I.

¶ 21. In his brief filed in this court on appeal, Reitz challenged the referee's findings and conclusions with respect to both Counts II and III. As noted, however, at oral argument before this court, he withdrew his challenge to the referee's findings and conclusions with respect to Count III. Thus, he now only challenges the referee's conclusion that the facts establish that his conduct violated SCR 20:1.8(h) as alleged in Count II.

¶ 22. According to Referee Baron, by preparing a release of liability for Mandelman for N.C.'s signature only moments before Mandelman was to take the deposition of the defendant in the legal malpractice action, and inducing N.C. to sign that release without first advising her that independent representation was appropriate, Reitz had violated SCR 20:1.8(h) as alleged in Count II, and SCR 20:8.4(a) as alleged in Count III. The referee noted that there was no question that Reitz had not informed N.C. that she should or could have legal representation before signing the release he had prepared. The referee also rejected, as not credible,

Reitz's denial that he told N.C. that if she did not sign the release, then Mandelman would not proceed with the deposition.

¶ 23. Similarly, the referee rejected Reitz's argument that although he had prepared the document at Mandelman's request, Reitz had mistakenly used the "Release of Liability" form language and that neither he nor Mandelman had sought a waiver of liability. The referee wrote:

> Reitz's contention that his preparation of the document for Mandelman contained errors and, in addition, he himself was not asking for a waiver of his own liability does not negate the fact that he assisted in a violation of SCR 20:8.4 by his participation. He placed his client in a no-win situation: either she signed the Release immediately or Mandelman would not take the deposition of the defendant in her case or if she refused, a vital part of trial preparation would be omitted and her case would be jeopardized.

¶ 24. Reitz maintains on this appeal that OLR did not meet its burden establishing by clear, satisfactory, and convincing evidence that he violated the Rules of Professional Conduct as alleged in Count II. He concedes that he prepared the release and that the language he used in that document attempts to limit Mandelman's liability. However, Reitz contends that this was done by mistake; he insists that Mandelman had only requested him to prepare a document for N.C.'s signature indicating that she had been satisfied with the work Mandelman had done for her up to that time.

¶ 25. Reitz further notes that Count II alleges a violation of SCR 20:1.8, the rule prohibiting a conflict of interest between a lawyer and client. And, again, Reitz points out that the release he prepared was not a

release of his own liability to N.C.; rather, it was only a release of Mandelman's potential liability. Reitz suggests that if any rule was violated by this conduct, it was SCR 20:8.4—the violation alleged in Count III—a violation that Reitz does not now challenge. Reitz maintains that because he personally was not benefited in any way by the violation as alleged in Count II, he cannot be found to have committed the misconduct as alleged in that count.

¶ 26. Furthermore, Reitz claims that there is a logical inconsistency in finding that he committed the misconduct alleged in both Counts II and III; according to Reitz, either he obtained the release to benefit himself—which would have been a conflict of interest as alleged in Count II—or he assisted another attorney to violate SCR 20:1.8(h) which was the basis for the misconduct alleged in Count III.

¶ 27. OLR rejects Reitz's narrow reading of these rules as well as his claim that he did not personally benefit from the release he drafted. OLR notes that Reitz and Mandelman were law partners operating their law firm as a limited liability practice. According to OLR, to the extent that one partner receives liability protection in any given matter, it necessarily inures to the benefit of all other partners. OLR also points to the referee's rejection of Reitz's "hairsplitting reading" of SCR 20:1.8(h) and the referee's statement that Reitz " . . . cannot avoid responsibility for having placed his client in an untenable position by arguing that it was not a release of liability for himself but rather for his partner."

¶ 28. While we agree that Reitz's actions placed his client in an untenable position, we are not persuaded that this constituted a violation of SCR 20:1.8 as alleged in Count II. We cannot conclude that Reitz's

actions in preparing the release, which by its terms only applied to Mandelman, constituted a violation of SCR 20:1.8(h). This release did not purport to release the law firm nor did it mention Reitz. *See re Disciplinary Proceedings Against Mandelman,* 158 Wis. 2d 1, 460 N.W.2d 749 (1990). It only purported to release Mandelman from any liability to N.C.

¶ 29. Moreover, we find no support for OLR's suggestion that because Mandelman and Reitz had structured their law firm as a limited liability organization, that the release operated to benefit Reitz personally. SCR 20:1.8(h) precludes a lawyer from making an agreement " . . . prospectively limiting *the* lawyer's liability to a client for malpractice . . . ." (Emphasis added.) The document prepared by Reitz, which named only Mandelman as the beneficiary of N.C.'s release of any claim of liability she may have, does not fall within the prohibition of this rule. It did not prospectively limit Reitz's liability to his client. We do not accept OLR's broad reading of this rule because, among other reasons, lawyers are permitted under the statutes and our rules to practice law and render professional legal services through limited liability organizations.[7] Furthermore, even if a lawyer structures a law firm as a limited liability organization, he or she is not relieved from personal liability for any acts, errors, or omissions

---

[7] SCR 20:5.7 Limited liability legal practice.

(a)(1) A lawyer may be a member of a law firm that is organized as a limited liability organization solely to render professional legal services under the laws of this state, including chs. 178 and 183 and subch XIX of ch. 180. The lawyer may practice in or as a limited liability organization if the lawyer is otherwise licensed to practice law in this state and the organization is registered under sub. (b).

arising out of the performance of professional services. SCR 20:5.7(2).[8] Limited liability organizations are primarily used for business or tax reasons; however, to the extent that that structure may affect a lawyer's professional liability, the use of a limited liability organization only protects the personal assets of non-negligent attorneys in the limited liability firm. *See* Wis. Stat. § 183.0403 (2003–04). See also Melvin McCartney, *Question and Answer: Limited Liability Practice,* Wisconsin Lawyer (May 1997). Structuring a law practice as a limited liability organization and practicing law via such organization does not change the personal liability of an attorney for that attorney's own negligence in providing professional legal services and even under a limited liability organizational structure, a lawyer's personal assets remain exposed for his or her negligence in providing professional services.

¶ 30. In this case, the release of liability Reitz prepared for N.C.'s signature, which purportedly released any claim she may have had against Mandelman for his negligence, did not benefit Reitz. Reitz remained liable for his own personal negligence. Consequently, Reitz's conduct did not fall within the proscription of SCR 20:1.8(h). We conclude that Reitz's actions with respect to preparing this release for N.C.'s signature, while clearly ill-advised and not to be emulated or condoned, did not constitute a violation of SCR 20:1.8(h). Accordingly, we reject the referee's conclusion of law that Reitz engaged in the misconduct alleged in this court.

---

[8] SCR 20:5.7(2) Limited liability legal practice.

(2) Nothing in this rule or the laws under which the lawyer or law firm is organized shall relieve a lawyer from personal liability for any acts, errors or omissions of the lawyer arising out of the performance of professional services.

## CLIENT T.W.—COUNTS IV AND V

¶ 31. Reitz does not now challenge the referee's findings and conclusions of law that he engaged in misconduct as alleged in Counts IV and V of OLR's complaint. The facts supporting those counts as established by clear, satisfactory, and convincing evidence are these: On October 7, 1999, T.W. retained Reitz to represent her on a workers compensation claim. Reitz, however, did little or nothing on that claim until a hearing application was filed with the Department of Workforce Development (DWFD) on March 17, 2001. T.W. testified that after she retained Reitz, she had tried to contact him by telephone numerous times. On June 26, 2001, T.W. wrote to Reitz complaining that he never returned her telephone calls and stating "I've had enough. I've waited 2 years for nothing. I will find a lawyer who wants to help me."

¶ 32. T.W.'s claim was dismissed by DWFD on July 12, 2001 because the required medical reports had not been filed with the claim. It is not clear from the record if Reitz informed T.W. of that dismissal at that time. After T.W. filed a grievance with OLR, Reitz contacted T.W. and then informed OLR that T.W. had agreed to allow him to continue to represent her. Reitz did not tell OLR, however, that T.W.'s claim had been dismissed by DWFD.

¶ 33. OLR subsequently dismissed T.W.'s grievance against Reitz relying on his report that he was communicating with T.W. and working on her claim; at the time OLR dismissed T.W.'s grievance, it was unaware that T.W.'s claim had been dismissed by DWFD. From August 13, 2001 to April 8, 2002, Reitz did not communicate with T.W. or perform any work on her workers compensation claim.

¶ 34. T.W. called Reitz's partner, Mandelman, and complained that Reitz was not responding to her phone calls; she informed Mandelman that she did not want Reitz to handle her case any longer. T.W. then again contacted OLR complaining that Reitz was failing to respond to her telephone calls and letters; and she reported that her workers compensation claim had been dismissed. In response, OLR reopened its investigation of that grievance against Reitz.

¶ 35. This course of conduct, which Reitz does not now challenge, led to the following two counts of misconduct as alleged by OLR in its complaint and as found by the referee in her report:

- Count IV—By failing to pursue [T.W.'s] workers compensation claim in a timely manner, Reitz failed to act with reasonable diligence and promptness in representing [T.W.], in violation of SCR 20:1.3.

- Count V—By failing to respond to [T.W.'s] telephone calls seeking information about her case and by failing to inform [T.W.] that her case had been dismissed, Reitz failed to keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information, in violation of SCR 20:1.4(a).[9]

### CLIENT L.K.—COUNTS VI AND VII

¶ 36. On this appeal, Reitz does not now challenge the referee's findings and conclusions with respect to

---

[9] SCR 20:1.4(a) states: "Communication. (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

Count VI of the complaint. However, he does challenge the referee's findings and conclusions with respect to Count VII. The facts presented to the referee relating to these two counts are these: On September 10, 1999, L.K. was involved in a five-car collision; shortly thereafter, L.K. retained Reitz & Mandelman, LLC to represent her in her personal injury claim arising from the accident. After the accident, L.K. received chiropractic treatment which ended in January 2000. Between February 2000 and May 2000, Reitz gathered L.K.'s medical records, bills, and wage loss information. Then, on May 16, 2000, he submitted those records to the insurer of one of the drivers involved in the accident and made a settlement demand on behalf of L.K. According to L.K.'s testimony at the disciplinary hearing, Reitz then took no further action on her case from May through October 20, 2000. Reitz, however, testified at the disciplinary hearing that L.K. was aware that settlement negotiations were taking place during that period involving his partner, Mandelman, and the adverse insurance carrier.

¶ 37. Between October 21, 2000 and January 4, 2001, Mandelman continued to pursue settlement negotiations and obtained from the insurer an offer to settle L.K.'s claim for $17,000. That offer was rejected, and Reitz told L.K. on January 4, 2001 that Reitz would "immediately" file a lawsuit on her behalf.

¶ 38. L.K. subsequently testified at Reitz's disciplinary hearing that between January 4, 2001 and March 7, 2001, she called Reitz numerous times and left messages seeking a status report on her case. Reitz, however, did not return her calls. L.K. further testified that she spoke with Reitz on March 7, 2001 and during that conversation, she was led to believe that he was

filing a lawsuit on her behalf and that she would soon get a copy of the documents by mail.

¶ 39. On March 29, 2001, L.K. received a summons and complaint that had been signed by Reitz. His cover letter stated "Please find enclosed a copy of the Summons and Complaint for your lawsuit. We will keep you advised of any changes as they develop." Nothing on those documents suggested that they were only drafts of a summons and complaint. L.K. testified that based on that correspondence, she believed that Reitz had commenced a lawsuit on her behalf. She further testified that after waiting for most of the 45–day period the defendants had to answer that summons and complaint, she called Reitz on May 2, 2001 to ask about the status of her case. Reitz told L.K. that her claim had been denied and that he would schedule a conference with the court to try to resolve the matter. L.K. thereafter made repeated inquiries about the court date. She was told by Reitz that he was trying to settle the case and later he told her that he was having a consultant review her file and was awaiting a call from the court.

¶ 40. On May 31, 2001, L.K. contacted Reitz for a status update. Reitz told her that there were often delays when the insurance company refuses to pay; he promised that he would continue settlement talks and set a date with the judge. Reitz instructed L.K. to call him the following Friday and when she did, Reitz told her that the court clerk would be calling him back in a few days with a court date. On June 22, 2001, L.K. again spoke with Reitz who informed her that a consultant was then reviewing her file for completeness and that they were still waiting for a call from the court which Reitz expected would come by June 25; Reitz also told L.K. that he thought a court date would then be set for two to six weeks thereafter. In a subsequent in-

person meeting with Reitz on July 9, 2001, L.K. reiterated her desire to litigate her claim and repeated her position that the earlier $17,000 settlement offer from the insurance company was inadequate.

¶ 41. Between May and September, 2001, Reitz attempted mediation with the insurance company in lieu of filing a lawsuit. On September 23, 2001, after it became apparent that the insurer would not increase its earlier settlement offer or mediate the matter, Reitz prepared another summons and complaint, identical to the summons and complaint he had previously mailed to L.K. Reitz, however, filed neither the first summons and complaint nor the second summons and complaint; consequently, no lawsuit had been commenced on L.K.'s behalf.

¶ 42. This course of conduct led to the following two counts of misconduct as alleged in the OLR complaint:

- Count VI—By failing to pursue [L.K.'s] personal injury claim in a timely manner, Reitz failed to act with reasonable diligence and promptness in representing [L.K.], in violation of SCR 20:1.3.

- Count VII—By misrepresenting to [L.K.] that he had filed the lawsuit on her behalf, Reitz engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of SCR 20:8.4(c).[10]

¶ 43. The referee determined that the OLR had presented clear and satisfactory evidence that Reitz had committed both violations as alleged. Reitz does not now challenge the referee's findings and conclusions with respect to Count VI.

---

[10] SCR 20:8.4(c) states: "Misconduct. It is professional misconduct for a lawyer to: (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

¶ 44. With respect to Count VII, the referee found that Reitz had engaged in deceit, misrepresentation or dishonesty by his behavior and the information he had given his client, L.K., concerning his preparation of a summons and complaint for her lawsuit. According to the referee, the wording on Reitz's March 29, 2001 cover letter, which included a summons and complaint that he had signed, indicated to L.K. that Reitz had, in fact, initiated a lawsuit on her behalf. The referee observed that there was nothing in that cover letter or on the summons and complaint to suggest that those documents were simply "drafts."

¶ 45. Furthermore, the referee noted that Reitz had acknowledged that a lay person would think that a signed summons and complaint represented the initiation of a lawsuit. According to the referee, a prudent lawyer intending that such documents were to be merely drafts, would have explained that fact to his client or stamped "draft" on the documents. Reitz, however, did neither. Moreover, the referee pointed out that in subsequent conversations with L.K., Reitz did nothing to disabuse her of her belief that he had filed a lawsuit on her behalf. According to the referee, Reitz's actions led L.K. to believe that progress was being made on her case when in reality, he was engaging in dishonesty, deceit, and misrepresentation.

¶ 46. On this appeal, Reitz maintains that there is no clear and convincing evidence that he committed the ethical violation as alleged in Count VII. He believes that the evidence only established poor communication skills on his part, but not deceitful or dishonest conduct as proscribed by SCR 20:8.4. He characterizes this situation as being simply a "miscommunication between she [L.K.] and I [sic] . . . ." He insists that on the evidence presented, the referee could not find that he

had been deceptive, deceitful or had misrepresented anything to L.K. Although he acknowledges miscommunication, Reitz insists that there was nothing "more insidious" and therefore his behavior did not violate the rule.

¶ 47. We reject Reitz's arguments. We conclude that the referee's findings of fact were not clearly erroneous and that Reitz's behavior with respect to his client, L.K., constitutes dishonesty, deceit, and misrepresentation as proscribed by SCR 20:8.4. We agree with OLR that Reitz's March 29 cover letter to L.K. could only be interpreted by a lay person like L.K. as meaning that a lawsuit had been filed on her behalf. Furthermore, Reitz continued with that deception in all of his subsequent conversations with L.K. between May and September 2001. We note that SCR 20:8.4 is stated in the disjunctive and prohibits a lawyer from engaging in four specific types of misconduct: "dishonesty, fraud, deceit or misrepresentation." We conclude that Reitz's failure to inform his client that no lawsuit had in fact been commenced on her behalf amounted to a deceitful omission of relevant information. Such omission constitutes dishonest conduct within the meaning of this rule. *See In re Disciplinary Proceedings Against Knickmeier*, 2004 WI 115, ¶ 93, 275 Wis. 2d 69, 683 N.W.2d 445; see also *In re Disciplinary Proceedings Against Urban*, 2002 WI 63, 253 Wis. 2d 194, 645 N.W.2d 612. Because the referee's findings on these two counts were not clearly erroneous, we adopt them and we agree with the referee's conclusions that these actions violated the specific rules as alleged.

## CLLENT V.A.—COUNTS VIII, IX AND X

¶ 48. Reitz does not now challenge the referee's findings and conclusions with respect to the three

counts of misconduct involving client V.A. The facts supporting these counts are these: On June 15, 1998, V.A. was a passenger in a car stopped at a red light when that car was rear-ended by an unlicensed cab driver. About a week later, both V.A. and the driver of the car retained Mandelman to represent them in personal injury actions. V.A. provided Mandelman with a copy of a police incident report.

¶ 49. At Mandelman's direction, V.A. sought chiropractic treatment incurring a bill of $4000. V.A. submitted that bill to her health insurance company but payment was refused.

¶ 50. When Reitz became a partner with Mandelman in March 1999, V.A.'s file was transferred to him. On March 26, 1999, Reitz wrote to the cab company in an effort to determine the identity of the cab driver, but he received no response. More than seven months later, Reitz sent a follow-up letter. The cab company responded on November 18, 1999 asserting that the driver could not be located without more information.

¶ 51. V.A. testified at Reitz's disciplinary hearing that during this time, Reitz would occasionally tell her that her case was going well, and on other occasions, would say it was not. V.A. claimed that Reitz led her to believe that he was dealing with the cab company's insurer and that the insurance company was denying liability. In addition, V.A. testified that she would periodically call Reitz to check on the status of her case but she began to feel that he was ignoring it. According to V.A., during this period, she made more than 20 calls to Reitz and even though she left messages for him, he never returned her calls. V.A. further testified that for over a year, she had received no information from Reitz about the difficulties he claimed to be having with her case; nor did he ever tell her that he intended to drop

her case because he could not identify the cab driver. Reitz ultimately decided to drop V.A.'s case but then failed to send a disengagement letter to her. Then the statute of limitations barring V.A.'s personal injury claim expired on June 15, 2001.

¶ 52. V.A. later filed a grievance with OLR. She and Reitz subsequently reached a financial settlement with Reitz agreeing to pay her $2,000 and to hold her harmless for the chiropractic fees she had incurred.

¶ 53. This course of conduct led to Counts VIII, IX, and X of the OLR complaint. As noted, Reitz does not dispute the referee's finding of misconduct regarding these three counts:

- Count VIII——By failing to pursue [V.A.'s] personal injury case in a timely manner, Reitz failed to act with reasonable diligence and promptness in his representation of [V.A.] in violation of 20:1.3.

- Count IX—By failing to advise [V.A.] that Reitz was unable to identify the defendant in [V.A.'s] case and of the resulting difficulty in proceeding with the case, Reitz failed to explain a matter to the extent reasonably necessary to permit [V.A.] to make informed decisions regarding the representation, in violation of SCR 20:1.4(b).[11]

- Count X——By failing to notify [V.A.] that Reitz was terminating the representation, Reitz failed

---

[11] SCR 20:1.4(b) states: "Communication. (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

to take steps to the extent reasonably practicable to protect [V.A.'s] interest, in violation of SCR 20:1.16(d).[12]

## CLIENT C.K.—COUNTS XI AND XII

■

¶ 54. Reitz does not now challenge the referee's findings and conclusions with respect to Count XI; however, he does appeal from the referee's findings regarding Count XII. The facts surrounding these two counts are these: On July 18, 1998, C.K. was injured when his motorcycle was forced off the road by a pickup truck. In January 1999, C.K. retained Mandelman to represent him in a claim against the insurer of the pickup. Later Reitz took over C.K.'s personal injury case when he and Mandelman became partners. Reitz sent C.K.'s medical records, bills, and wage loss verification data that had been collected by Mandelman, to the insurance company.

¶ 55. C.K. testified at the disciplinary hearing that he told Reitz in July 1999 that he would not seek additional medical treatment; C.K. reported that he would instead undertake therapy and strengthening at home. At that point, Reitz had sufficient information to submit a demand on C.K.'s behalf to the insurance company. Nevertheless, from November 1999 through July 2000, Reitz requested additional health and wage loss records from C.K. to be submitted to the insurance

---

[12] SCR 20:1.16(d) Declining or terminating representation

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned . . . .

company. During that time, he also attempted settlement negotiations with the insurer. C.K. contacted Mandelman in July 2000 to express his dissatisfaction about the slow pace of his case. C.K. stated that he wanted the case promptly moved along. A settlement offer of $12,000 was finally received from the insurer four months later. C.K. rejected that offer.

¶ 56. Subsequently, a new adjuster for the insurance company took over C.K.'s claim and that adjuster reduced the settlement offer to $8000. That offer was refused on February 7, 2001.

¶ 57. During this same period, several healthcare providers contacted C.K. about unpaid accrued fees. One clinic where C.K. had received treatment served C.K. with a summons to appear in court on January 16, 2001. C.K. faxed that summons to Reitz who assured C.K. that he would take care of it.

¶ 58. On January 15, 2001, Reitz spoke with the attorney representing that clinic; Reitz and the other lawyer agreed that the clinic would take a judgment against C.K. but delay docketing it for 30 days so that C.K. could make arrangements to pay it. Subsequently, after not hearing anything from Reitz for 45 days, the clinic docketed the judgment and commenced a garnishment action against C.K.

¶ 59. At the disciplinary hearing, Reitz denied that he had made no reasonable, substantive efforts between February and May, 2001 to advance C.K.'s case. C.K., on the other hand, testified that he thought the clinic's claim would be taken care of by Reitz and he was later surprised to learn from his employer that his wages were being garnished.

¶ 60. C.K. further testified that between February and May, 2001, Reitz took no reasonable steps to advance C.K.'s personal injury case; then the day before

the statute of limitations was to run on C.K.'s claim, Reitz commenced an action against the truck driver in Shawano County. Thereafter, aside from responding to interrogatories from the defendants, Reitz did nothing on C.K.'s case for the remainder of the year 2001.

¶ 61. In March 2002, C.K. called the clerk of court in Shawano County to ask about the status of his lawsuit. C.K. was told that if a status conference was not arranged soon, his personal injury case would be dismissed. C.K. called Reitz with that information and Reitz then secured a date for a status conference. C.K.'s case was later settled before trial.

¶ 62. This course of conduct led to Counts XI and XII as alleged in OLR's complaint. As noted, Reitz does not challenge the referee's finding and conclusion that he committed the misconduct as alleged in Count XI; however, Reitz does challenge the referee's finding and conclusion with respect to Count XII.

- Count XI—By failing to pursue [C.K.'s] personal injury claim in a timely fashion, Reitz failed to act with reasonable diligence and promptness in his representation of C.K., in violation of SCR 20:1.3.

- Count XII—By failing to communicate with [C.K.], Reitz failed to keep [C.K.] reasonably informed about the status of a matter and promptly comply with reasonable requests for information in violation of SCR 20:1.4(a).

¶ 63. Referee Barron found that OLR had established by clear and satisfactory evidence that Reitz had committed both counts of misconduct alleged in Counts XI and XII. Regarding Count XI, the referee noted that despite the fact that C.K.'s case was not complex or difficult, Reitz did little to move the case forward from

March of 1999 until its conclusion in February of 2003. According to the referee, it was only because C.K. had taken the initiative in contacting the circuit court to ask about the status of his case, that Reitz learned that the case was about to be dismissed because of his lack of action. The referee asserted that a reasonably diligent lawyer would have taken the responsibility of monitoring the lawsuit without having to rely on his client's self-help measures.

¶ 64. With respect to Count XII, Referee Baron noted that although C.K. testified that he had difficulty contacting Reitz at times, C.K. also acknowledged that on occasions, he had received calls from the firm. However, according to the referee, it was C.K. who usually initiated the telephone calls and then C.K. would speak to office staff about his case. Again, referring to the fact that C.K. had to call the circuit court to find out about his case, the referee concluded that Reitz had failed to keep C.K. reasonably informed about the status of his case as alleged in Count XII.

¶ 65. On appeal, Reitz insists that the evidence and the referee's findings do not support the conclusion that Reitz had failed to communicate with C.K. as alleged in Count XII. Reitz complains that the referee relied on the same underlying fact—that C.K. had to contact the circuit court himself—to support the misconduct findings with respect to both Counts XI and XII. Reitz maintains that while that fact may be relevant to the allegation of his lack of diligence in Count XI, it is not relevant to the charge of lack of communication in Count XII.

¶ 66. We are not persuaded by Reitz's argument that the lack of communication violation in Count XII is merely a repackaged allegation of lack of diligence as alleged in Count XI. We note, as OLR points out, that

C.K. testified before the referee that he had heard "very, very little" about the status of his case from Reitz. Most of the information C.K. received came via his calls and discussions with the law firm's staff. These facts, as found by the referee, support the conclusion that Reitz failed to communicate with his client, C.K. We conclude that Reitz committed both violations as alleged in Counts XI and XII.

## CLIENT T.O.—COUNT XIII

¶ 67. Reitz does not now challenge the referee's findings and conclusion that he committed the misconduct as alleged in Count XIII in OLR's complaint. The facts surrounding that count are these: On October 21, 1999, T.O. was injured when he jumped off his motorcycle to avoid being hit by a truck that was backing toward him. T.O. then retained an attorney to represent him in a personal injury action. That attorney secured a $5000 settlement offer from the truck driver and his insurer but T.O. rejected that offer. That attorney then filed suit in Waushara County on September 26, 2000 against the truck driver, his employer, and the insurer. The attorney, however, did not serve those defendants with the summons and complaint at that time. Shortly after that action was filed, in October 2000, T.O. retained Mandelman & Reitz to take over the case from the first attorney.

¶ 68. Reitz, however, never prepared a formal substitution of attorneys to be signed by T.O. and filed in court. He had prepared, but never filed in court, a formal notice of retainer. The first attorney turned over T.O.'s file to Reitz in November of 2000 but Reitz at that time delayed service of the summons and complaint in order to "come up to speed" on T.O.'s file.

¶ 69. On December 27, 2000, the Waushara County circuit court sent the first attorney a letter warning that the matter would be dismissed with prejudice if certificates of service were not filed within 20 days. Service was thereafter effectuated and Reitz filed the certificates on January 2, 2001.

¶ 70. On March 29, 2001, the circuit court, by letter, informed Reitz and T.O.'s first attorney that no substitution of attorneys on behalf of T.O. had been filed. The first attorney responded that it was up to Reitz to prepare and file the substitution of attorneys, stipulation, and order. Reitz, however, did not respond to the court's letter or the other attorney's assertion that it was Reitz's responsibility to prepare and file a substitution of attorneys. On May 2, 2001, T.O.'s case was dismissed without prejudice for failure to prosecute.

¶ 71. This course of conduct led to Count XIII in OLR's complaint. As noted, Reitz does not challenge the referee's findings and conclusion that he committed the following misconduct as alleged:

- Count XIII—By failing to timely respond to the court's correspondence regarding [T.O.'s] case, Reitz failed to act with reasonable diligence and promptness in representing [T.O.] in violation of SCR 20:1.3.

¶ 72. After making the findings of fact and conclusions of law, Referee Baron then discussed the appropriate discipline to be recommended for Reitz's 13 violations of the Rules of Professional Responsibility. The referee was not persuaded by Reitz's argument that because he had never before been disciplined, and because he had not engaged in theft or deceit that had caused harm to his clients, a public reprimand would be an appropriate sanction for the nine counts of miscon-

duct which Reitz did not dispute. Instead, the referee concluded that the OLR had met its burden of proving by clear and convincing evidence that Reitz had committed all 13 counts of misconduct as alleged. The referee reasoned that in order to impress upon Reitz, the public, the courts and the legal system, the seriousness of Reitz's disregard of his responsibilities as a lawyer, she would recommend a six-month suspension of his license, plus the requirement that he pay all the costs of these proceedings.

¶ 73. Because the referee's findings of fact have not been shown to be clearly erroneous, we adopt them. We also agree with the referee's conclusions of law except with respect to Count II. As discussed above, with regard to that count, we reject the referee's conclusion that Reitz's actions violated SCR 20:1.8(h).

¶ 74. Although this court takes into account the referee's recommendation regarding discipline, we do not accord such recommendation conclusive or great weight because ultimately, it is this court's responsibility to determine the appropriate discipline to be imposed for an attorney's misconduct. In making that determination, this court is free to impose discipline that is more or less severe than that recommended by the referee. *In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686; *In re Disciplinary Proceedings Against Elliott,* 133 Wis. 2d 110, 394 N.W.2d 313 (1986).

¶ 75. Although the 12 counts of misconduct committed by Reitz were serious infractions of the Rules of Professional Responsibility, under the totality of the circumstances, including the fact that he has never before been disciplined for professional misconduct and the fact a six-month suspension as recommended by the

581

referee would require Reitz to petition for reinstatement, which would entail additional delay and costs, see SCR 22.28(3), we conclude that a five-month suspension of Jeffrey A. Reitz's license to practice law in this state is an appropriate discipline for his misconduct. We also determine that he should pay all the costs of this disciplinary proceeding which now total $7735.62. Accordingly,

¶ 76. IT IS ORDERED that the license of Jeffrey A. Reitz to practice law in Wisconsin is suspended for five months commencing May 15, 2005, as discipline for his professional misconduct.

¶ 77. IT IS FURTHER ORDERED that within 60 days of the date of this order, Jeffrey A. Reitz pay to the Office of Lawyer Regulation all the costs of this proceeding. If the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Jeffrey A. Reitz to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 78. IT IS FURTHER ORDERED that Jeffrey A. Reitz comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.