In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Michael W. TOBIN, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Appellant-Cross-Respondent,

v.

Michael W. TOBIN,
Respondent-Respondent-Cross-Appellant.

Supreme Court

*No. 2005AP1281–D. Oral argument January 16, 2007.*
*—Decided May 9, 2007.*

2007 WI 50

(Also reported in 730 N.W.2d 896.)

250

For the complainant-appellant-cross-respondent there were briefs and oral argument by *William J. Weigel,* litigation counsel.

For the respondent-respondent-cross-appellant there were briefs by *Christopher T. Kolb* and *Halling & Cayo, S.C.* Milwaukee, and oral argument by *Christopher T. Kolb.*

¶ 1. PER CURIAM. The Office of Lawyer Regulation (OLR) appeals and Attorney Michael W. Tobin cross-appeals the report of Richard C. Ninneman, referee, recommending discipline of 120 days license suspension and the imposition of costs. The referee found that Attorney Tobin committed nine of ten charged counts of misconduct that include trust account violations, conversion and false statements to the OLR. The only issue on appeal and cross-appeal is whether the recommended discipline is appropriate.

¶ 2. We adopt the referee's findings of fact and conclusions of law. We conclude that the referee's reasoning with respect to discipline is persuasive. Accordingly, this court concludes that a four month suspension of Attorney Tobin's license to practice law in Wisconsin is an appropriate sanction for his violations. We further agree with the referee that Attorney Tobin shall bear the costs of this disciplinary proceeding.[1]

¶ 3. Attorney Tobin was licensed to practice law in 1980 and practices in Milwaukee. He has not been previously disciplined.

¶ 4. In 1999 the OLR began an investigation into Attorney Tobin's trust account recordkeeping proce-

---

[1] The OLR has filed a statement of costs amounting to $15,020.10. No objection to the statement has been received.

dures after receiving notice of a trust account overdraft. No disciplinary proceedings arose from the overdraft notice; however, subsequent trust account violations gave rise to these proceedings.

¶ 5. Attorney Tobin's practice concentrates on providing high volume real estate closing services to lenders.[2] To handle funds related to real estate closings, Attorney Tobin maintained five separate trust accounts. He also maintained a general business account and a payroll account at the Associated Bank.

¶ 6. In January 2005 Attorney Tobin requested his real estate closing trust account at Wells Fargo Bank to be closed. Attorney Tobin explained to the OLR that he had discontinued using this account in part due to an earlier OLR request related to upgrading his software program. When the Wells Fargo trust account was closed, 18 uncashed checks amounting to $3545.67 were outstanding, none of which were payable to Attorney Tobin. The trust account balance of $2834.96 was $710.71 less than the amount attributable to the 18 outstanding checks.

¶ 7. On January 4, 2005, in connection with closing the account, by check payable to "Michael Tobin," Attorney Tobin disbursed the entire trust account balance of $2834.96 to his business account at Associated Bank. The same day he transferred $3000 from his business account to his payroll account and disbursed $1797 from his payroll account to himself.

---

[2] The referee found that "[i]n 2002/2003 Tobin estimated that his office closed approximately 2,000 real estate transactions per year involving approximately five hundred million dollars." The number of trust account checks issued in connection with these closings was estimated at 15,000 to 20,000 per year.

¶ 8. The next day, January 5, 2005, Attorney Tobin transferred an additional $1500 from his Associated Bank business account to his Associated Bank payroll account and disbursed $870.37 to himself from the payroll account. His business account balance for January 5, 2005, was $2145.87.

¶ 9. In a March 2005 letter to the OLR, Attorney Tobin listed the dates and numbers of the 18 checks outstanding at the time the Wells Fargo trust account was closed, as well as the various payees and amounts. Attorney Tobin wrote the OLR that the original payees were probably not entitled to the funds, and in "most cases, I have been unable to determine who is. The time I have spent attempting to resolve these items is well in excess of the amount involved." Attorney Tobin explained, for example, that with respect to a $1155 check made out for an insurance premium, he had contacted the borrower and learned that the premium had already been paid. Attorney Tobin had disbursed these funds to himself on January 4, 2005.

¶ 10. The OLR requested documentation of his attempts to contact the persons entitled to any portion of the $3545.67. In April 2005 correspondence, Attorney Tobin indicated to the OLR that he spent over three hours attempting to investigate one outstanding check. In a May 2005 letter, he stated that he had begun to review the 18 uncashed checks, but his previous representations as to his investigations related only to unpaid checks in general, not any one check specifically. In a follow up letter in May 2005, Attorney Tobin stated that he made "no systematic effort to identify the rightful owner of uncashed checks prior to March 2, 2005." He indicated that stop payment requests were impractical due to their cost and the short duration of time the request is honored. Attorney Tobin also stated

254

that he had not segregated the funds after he closed the Wells Fargo trust account, but treated the checks as abandoned property and transferred the funds to his office account.

¶ 11. Attorney Tobin's conduct with the Wells Fargo account gave rise to four counts charged in the OLR's amended complaint: In Counts One and Two, Attorney Tobin was charged with failure to hold third-party funds in trust, contrary to SCR 20:1.15(b)(1),[3] due to his overdraft of $710.71 and disbursing $2834.94 when he closed the account. Count Three charged Attorney Tobin with converting the $2834.94 by depositing the funds in his business account and transferring them to his payroll account, thus engaging in dishonesty, fraud, deceit or misrepresentation, contrary to SCR 20:8.4(c).[4] Count Four charged that by misrepresenting to the OLR his attempts to locate the rightful owners of the Wells Fargo trust account funds, Attorney Tobin knowingly made false statements to the OLR, contrary to SCR 22.03(6).[5]

¶ 12. In addition to the Wells Fargo trust account, Attorney Tobin also closed two other trust accounts.

---

[3] SCR 20:1.15(b)(1) states: Segregation of trust property.

(1) Separate account. A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

[4] SCR 20:8.4(c) states that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[5] SCR 22.03(6) states that "[i]n the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and

255

These accounts were held at the Park Bank. The first was closed in September 2004 and the second was closed in January 2005. Attorney Tobin stated he deposited the funds from these two trust accounts into his general account at Associated Bank. One trust account had contained 31 uncashed checks totaling $3484.27; the other contained 12 uncashed checks totaling $2964.57. Attorney Tobin stipulated that the information he provided the OLR did not indicate the date that he transferred the funds to his general account, but instead indicated a future August 6, 2005, transfer to a M&I Bank trust account.

¶ 13. Attorney Tobin stipulated that as of January 19, 2005, the three trust accounts had been closed, and the balance in his business account and payroll account totaled less than the sum of the outstanding checks from the three trust accounts. The stipulation stated that as of August 1, 2005, Attorney Tobin had not maintained the trust account funds on deposit in his payroll or general business accounts and had not placed them in another trust account.

¶ 14. The OLR complaint alleged that Attorney Tobin's conduct with respect to the two Park Bank accounts gave rise to Counts Five through Eight. Counts Five and Seven charged that by closing the two accounts and disbursing the funds to himself, he failed to hold client and third-party funds in trust, violating SCR 20:1.15(b)(1). Counts Six and Eight charged that by depositing the proceeds of each account into his business account, he converted trust account funds,

the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

thereby engaging in dishonesty, fraud, deceit or misrepresentation, contrary to SCR 20:8.4(c).[6]

¶ 15. In Count Ten, the OLR charged that by filing an inaccurate annual bar dues certification and alternatively, if failure to check the certification box on the dues statements constitutes failure to certify, Attorney Tobin violated former SCR 20:1.15(g)[7] for years 1999, 2000 and 2001.

¶ 16. Following a hearing on the complaint, the referee determined that the parties' partial stipulation of facts supported Counts One through Eight of the OLR's amended complaint. The referee found: "Tobin closed three trust accounts with 61 uncashed and

---

[6] Count Nine involved recordkeeping issues. Because the dismissal of Count Nine is unchallenged, we do not address it.

[7] Former SCR 20:1.15 applies to misconduct committed prior to July 1, 2004. Former SCR 20:1.15(g) stated:

> (g) A member of the State Bar of Wisconsin shall file with the State Bar annually, with payment of the member's State Bar dues or upon such other date as approved by the Supreme Court, a certificate stating whether the member is engaged in the private practice of law in Wisconsin and, if so, the name of each bank, trust company, credit union or savings and loan association in which the member maintains a trust account, safe deposit box, or both, as required by this section. Each member shall explicitly certify therein that he or she has complied with each of the recordkeeping requirements set forth in paragraph (e) hereof. A partnership or professional legal corporation may file one certificate on behalf of its partners, associates, or officers who are required to file under this section. The failure of a member to file the certificate required by this section is grounds for automatic suspension of the member's membership in the State Bar in the same manner as provided in SCR 10.03(6) for nonpayment of dues. The filing of a false certificate is unprofessional conduct and is grounds for disciplinary action. The State Bar shall supply to each member, with the annual dues statement or at such other time as directed by the Supreme Court, a form on which the certification must be made and a copy of this rule.

outstanding checks on such accounts totaling $9,994.51 and in so doing transferred $9,283.80 to his business/payroll accounts and ultimately used the proceeds to pay employees." The referee concluded that in so doing, Attorney Tobin violated former SCR 20:1.15(b)(1) by failing to hold client and third-party funds in trust, as well as violating SCR 20:8.4(c) by converting trust account funds to his own use, thereby engaging in dishonesty, fraud, deceit or misrepresentation.

¶ 17. The referee found that Attorney Tobin's explanations for his actions were unacceptable. For example, Attorney Tobin blamed his actions on faulty advice he claimed to have received from the Board of Attorneys Professional Responsibility (BAPR) in 1987. The referee said: "[T]o rely on some unidentified clerical person to pursue an inquiry of this importance without any documentation whatsoever as to the individual to whom the inquiry was made is also unreasonable."

¶ 18. Nonetheless, the referee noted that Attorney Tobin's initial receipt of funds from lenders in connection with closings involved no rule violations. Also, the referee noted Attorney Tobin's testimony to the effect that a stop payment request could be impractical, and that reissuing a check could expose Attorney Tobin and the trust account to presentation of both the original and reissued check, potentially resulting in double payment.

¶ 19. However, the referee observed that by late 2004 or early 2005 it would be difficult to trace a particular payee and resolve issues dating back to 1997 or 2000, a problem caused by Attorney Tobin's failure to address the issue earlier. The referee found, "It is clear to this Referee that no serious effort was made by Tobin

258

to locate the proper payee and resolve these matters prior to the closing of the three trust accounts."

¶ 20. Additionally, the referee concluded that illustrating Attorney Tobin's lack of candor was his representation to the OLR that he attempted to correct the trust conversion problem by depositing proceeds into a trust account on August 6, 2005. The OLR had received correspondence to this effect on August 8 but bank statements revealed the deposits were not made until August 15, 2005. The referee concluded that clear and convincing evidence demonstrated Attorney Tobin knowingly made false statements of material fact to the OLR, contrary to SCR 22.03(6) and SCR 20:8.4(f),[8] charged in Count Four.[9]

¶ 21. With respect to Count Ten, the referee said the evidence was undisputed that Attorney Tobin failed to check the certification box on his annual state bar dues statements for years 1999, 2000 and 2001, thus violating former SCR 20:1.15(g). The referee rejected Attorney Tobin's claim that his failure was inadvertent, because it occurred during an OLR investigation of his trust account recordkeeping procedures and while Attorney Tobin was experiencing overdrafts. In any event, the referee said, "knowing" is not a required element of the charged rule violation.

¶ 22. The referee viewed Attorney Tobin's lack of disciplinary history and his appropriate initial treat-

---

[8] SCR 20:8.4(f) states that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

[9] Although Attorney Tobin challenges the referee's determination that this evidence demonstrates a lack of candor, he does not challenge the referee's finding of a rules violation charged in Count Four.

ment of the third-party funds as mitigating factors. He also noted the several character witnesses who testified on Attorney Tobin's behalf. The referee determined, nonetheless, that Attorney Tobin's cavalier attitude towards others' funds, his prompt conversion of the funds and his lack of candor, as charged in Counts One through Eight, supported a 90-day license suspension. The referee added an additional 30-day suspension for Count Ten, the annual certification issue. The referee said that while generally this rule violation would not justify a suspension, the entire circumstances and Attorney Tobin's somewhat defiant attitude to the OLR with reference to his trust account issues in general called for an additional consecutive 30-day suspension, for a total of 120 days. The referee also recommended that Attorney Tobin should be assessed the entire costs of the disciplinary proceeding.

¶ 23.   The OLR appeals. The only issue is whether the recommended 120-day discipline for Attorney Tobin's misconduct is appropriate. The OLR argues that the serious nature of the misconduct, which includes conversion of approximately $10,000 of trust account funds, supports a two year license suspension. While the OLR acknowledges every disciplinary case is different, it relies on several cases, including *In re Disciplinary Proceedings Against Edgar,* 230 Wis. 2d 205, 601 N.W.2d 284 (1999) and *In re Disciplinary Proceedings Against Bult,* 142 Wis. 2d 885, 419 N.W.2d 245 (1988), as cases which imposed a two year license suspension.

¶ 24.   The OLR argues that Attorney Tobin's lack of prior discipline, his compliance with trust account rules when depositing the funds initially and his numerous character witnesses are inadequate mitigation. The OLR argues that the number and nature of the

violations, together with Attorney Tobin's lengthy legal experience and the victims' lack of knowledge that they were owed money, are aggravating factors. The OLR points to the referee's findings regarding Attorney Tobin's attitude and lack of candor with the OLR.

¶ 25. Attorney Tobin responds and cross-appeals, contending the recommended discipline is excessive. He argues that the violations arose from uncashed checks, a common problem in a practice involving real estate closings, particularly his, which involved some 70,000 checks and more than $3 billion over the past ten years. He claims he made regular efforts over the years to locate the proper recipients for uncashed checks. He admits that he was mistaken in assuming that when unsuccessful at locating the recipients, the property had been abandoned and therefore was no longer trust property. However, he argues there is no evidence or claim that he was in any way responsible for the payees' failures to cash their checks. He submits this mistake is the only blemish in an otherwise honorable career, and therefore the recommended sanction is too harsh.

¶ 26. Attorney Tobin emphasizes his clients have never complained about him and there is no suggestion he ever failed to deliver the checks to where they were supposed to go. He also points out no payee has ever complained about not receiving funds. He argues it is inevitable that checks may go uncashed for various reasons. He claims that there is no evidence the existence of uncashed checks was due in any way to any failure on his part. He notes the impracticalities of stop payment orders and reissuing duplicative checks. He claims that while a closing may take just two hours, it may take an additional three hours to determine where unclaimed funds should go. He rejects any implication that he needed funds to meet payroll.

¶ 27. Attorney Tobin does not specifically challenge the referee's findings of fact or conclusions of law. However, in the context of his challenge to the recommended discipline, he argues the referee misunderstood his statements to the OLR. He acknowledges they were not a model of clarity, but contends they were not intended to be misleading. He also points to the testimony of numerous character witnesses who testified on his behalf. Attorney Tobin further contends he listed his trust accounts on his annual bar dues statements, which were complete except for checking the certification box.

¶ 28. Attorney Tobin points out that he admitted the vast majority of the complaint's allegations and agreed to a partial fact stipulation. Attorney Tobin states that where he did resist the allegations with respect to recordkeeping as charged in Count Nine, the referee agreed and dismissed the count.

¶ 29. Attorney Tobin asserts that the cases the OLR cites are not analogous and claims cases involving a two year suspension involve misconduct far more egregious than his. Tobin contends that his case is similar to *In re Disciplinary Proceedings Against Trowbridge*, 177 Wis. 2d 485, 501 N.W.2d 452 (1993) (A 60–day suspension for a previously disciplined lawyer whose violations included trust account records, defective certification, and inappropriate removal of estate funds.) and *In re Disciplinary Proceedings Against Raymonds*, 2000 EI 116, 238 Wis. 2d 846, 618 N.W.2d 521 (A 90–day suspension for trust account violations; a $100,000 unexplained shortfall; misrepresentations to the BAPR and recordkeeping violations.). Attorney Tobin also refers to a number of private and public reprimands that involved trust account violations and failures to hold property in trust. Attorney Tobin submits that there is a lack of

direction as to what to do with unclaimed funds, citing *In re Disciplinary Proceedings Against Kalal*, 2005 WI 138, ¶ 30, 286 Wis. 2d 10, 704 N.W.2d 575 (the court directed Kalal to seek direction from the OLR to resolve the issue of unidentified client funds).

¶ 30.  This court concludes there is no claim that the referee's findings are clearly erroneous. The findings are supported by the record and are adopted. *See In re Disciplinary Proceedings Against Carroll*, 2001 WI 130, ¶ 29, 248 Wis. 2d 662, 636 N.W.2d 718. This court independently reviews the referee's legal conclusions. *Id.* Here, the referee's legal conclusions are reasonable and consistent with existing law. This court adopts the referee's conclusions of law.

¶ 31.  The level of discipline is the only dispute. As both parties point out, there are numerous cases supporting a wide range of sanctions. Ultimately, it is this court's responsibility and not the referee's to determine the appropriate discipline. *See In re Disciplinary Proceedings Against Reitz*, 2005 WI 39, ¶ 74, 279 Wis. 2d 550, 694 N.W.2d 894. This court considers the seriousness of the conduct as well as the need to protect the public, courts, and legal system from repetition of misconduct, to impress upon the attorney the seriousness of the misconduct and to deter other attorneys from engaging in similar misconduct. *See In re Disciplinary Proceedings Against Arthur*, 2005 WI 40, ¶ 78, 279 Wis. 2d 583, 694 N.W.2d 910.

¶ 32.  We agree with the OLR to the extent that the misconduct involved is serious and demonstrates the need to protect the public and deter attorneys from similar misconduct. *See id.* The seriousness of the

misconduct, which includes conversion of funds and false statements to the OLR, calls for more than a reprimand or minimal license suspension.

¶ 33.  We disagree, however, that a two year license suspension is called for under the particular facts of this matter. The record discloses a number of mitigating factors. Attorney Tobin has no previous disciplinary history. He admitted the majority of the allegations. He entered into a partial fact stipulation. He has made restitution to his trust account. He concedes that his transfer of funds due to uncashed checks from his trust accounts to his general and ultimately payroll account reflects significant misjudgment. We are persuaded that the record demonstrates Attorney Tobin understands the seriousness of his misconduct and it will likely not recur. The disciplinary proceedings have undoubtedly been significantly costly to Attorney Tobin. In view of the particular circumstances presented, we are persuaded that the referee's reasoning is sound. We conclude that a four month license suspension is sufficient to advance the objectives of lawyer discipline.

¶ 34.  We further conclude that full costs are to be imposed on Attorney Tobin. Neither the OLR nor Attorney Tobin disputes assessing Attorney Tobin with the full costs in the present case. Only the concurring and dissenting justice objects to the assessment of the costs.

¶ 35.  The assessment of full costs on the disciplined lawyer in the present case is in keeping with our practice under the rules in existence when this discipline action was commenced, namely that the general policy is that upon a finding of misconduct it is appropriate to impose all costs, including the expenses of

counsel for the OLR upon the disciplined lawyer. *See OLR v. Konnor,* 2005 WI 37, ¶¶ 37–92, 279 Wis. 2d 284, 694 N.W.2d 376 (Abrahamson, C.J., concurring).

■

¶ 36.   The court amended the rules relating to the assessment of costs in lawyer disciplinary proceedings on May 1, 2006. *See* S.Ct. Order 05–01, 2006 WI 34, 287 Wis. 2d xiii, 714 N.W.2d Ct.R-21 (May 1, 2006). The new rules do not apply to the present case; they apply "prospectively to disciplinary proceedings, medical incapacity proceedings, or reinstatement proceedings filed on or after July 1, 2006."[10] *Id.* at xv. This disciplinary action was commenced on May 16, 2005. Accordingly, in

---

[10] Effective July 1, 2006, SCR 22.24 provides:   Assessment of costs.

(1) The supreme court may assess against the respondent all or a portion of the costs of a disciplinary proceeding in which misconduct is found, a medical incapacity proceeding in which it finds a medical incapacity, or a reinstatement proceeding and may enter a judgment for costs. The director may assess all or a portion of the costs of an investigation when discipline is imposed under SCR 22.09. Costs are payable to the office of lawyer regulation.

(1m) The court's general policy is that upon a finding of misconduct it is appropriate to impose all costs, including the expenses of counsel for the office of lawyer regulation, upon the respondent. In cases involving extraordinary circumstances the court may, in the exercise of its discretion, reduce the amount of costs imposed upon a respondent. In exercising its discretion regarding the assessment of costs, the court will consider the submissions of the parties and all of the following factors:

(a) The number of counts charged, contested, and proven.

(b) The nature of the misconduct.

(c) The level of discipline sought by the parties and recommended by the referee.

(d) The respondent's cooperation with the disciplinary process.

the absence of any objection to assessing full costs on the disciplined lawyer and in the absence of extraordinary circumstances, we adhere to our practice of assessing full costs on the disciplined lawyer in the present case.

¶ 37. IT IS ORDERED the license of Attorney Michael W. Tobin to practice law in Wisconsin is suspended for four months effective June 12, 2007, as discipline for his professional misconduct.

¶ 38. IT IS FURTHER ORDERED that within 60 days of the date of this order, Attorney Michael W. Tobin

---

(e) Prior discipline, if any.

(f) Other relevant circumstances.

(2) In seeking the assessment of costs by the supreme court, the director shall file in the court a statement of costs within 20 days after the filing of the referee's report or a SCR 22.12 or 22.34(10) stipulation, together with a recommendation to the court regarding the costs to be assessed against the respondent. If an appeal of the referee's report is filed or the supreme court orders briefs to be filed in response to the referee's report, a supplemental statement of costs and recommendation regarding the assessment of costs shall be filed within 14 days after the appeal is assigned for submission to the court or the briefs ordered by the court are filed. The recommendation should explain why the particular amount of costs is being sought. Objection to a statement of costs [which may include relevant supporting documentation] shall be filed by motion within 21 days after service of the statement of costs. A respondent who objects to a statement of costs must explain, with specificity, the reasons for the objection and must state what he or she considers to be a reasonable amount of costs. The office of lawyer regulation may reply within 11 days of receiving the objection.

(3) Upon the assessment of costs by the supreme court, the clerk of the supreme court shall issue a judgment for costs and furnish a transcript of the judgment to the director. The transcript of the judgment may be filed and docketed in the office of the clerk of court in any county and shall have the same force and effect as judgments docketed pursuant to Wis. Stat. §§ 809.25 and 806.16 (1997–98).

pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified, and absent a showing to this court of his inability to pay the costs within that time, the license of Michael W. Tobin shall remain suspended until further order of this court.

¶ 39. IT IS FURTHER ORDERED that to the extent unidentified or unclaimed trust funds remain, Michael W. Tobin is to seek direction from and cooperate with the Office of Lawyer Regulation to resolve the issue.

¶ 40. IT IS FURTHER ORDERED that Michael W. Tobin comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 41. DAVID T. PROSSER, J. (*concurring in part, dissenting in part*). This appeal implicates an issue familiar to the court: the imposition of full costs against an attorney who is disciplined by the Lawyer Regulation System.

¶ 42. Last term, the court denied a petition to revise Supreme Court Rule 22.001(3) but instead created Supreme Court Rule 22.24(1m) and amended Supreme Court Rule 22.24(2) pertaining to this subject.[1]

¶ 43. New Supreme Court Rule 22.24(1m) provides:

> The court's general policy is that upon a finding of misconduct it is appropriate to impose all costs, including the expenses of counsel for the office of lawyer regulation, upon the respondent. In cases involving

---

[1] *See* S.Ct. Order 05–01, 2006 WI 34, 287 Wis. 2d xiii, 714 N.W.2d Ct.R-21 (May 1, 2006).

extraordinary circumstances the court may, in the exercise of its discretion, reduce the amount of costs imposed upon a respondent. In exercising its discretion regarding the assessment of costs, the court will consider the submissions of the parties and all of the following factors:

(a) The number of counts charged, contested, and proven.

(b) The nature of the misconduct.

(c) The level of discipline sought by the parties and recommended by the referee.

(d) The respondent's cooperation with the disciplinary process.

(e) Prior discipline, if any.

(f) Other relevant circumstances.

¶ 44. Supreme Court Rule 22.24(2) then adds in part:

. . . If an appeal of the referee's report is filed or the supreme court orders briefs to be filed in response to the referee's report, a supplemental statement of costs and recommendation regarding the assessment of costs shall be filed within 14 days after the appeal is assigned for submission to the court or the briefs ordered by the court are filed. The recommendation should explain why the particular amount of costs is being sought. Objection to a statement of costs [which may include relevant supporting documentation] shall be filed by motion within 21 days after service of the statement of costs. A respondent who objects to a statement of costs must explain, with specificity, the reasons for the objection and must state what he or she considers to be

268

a reasonable amount of costs. The office of lawyer regulation may reply with 11 days of receiving the objection.

¶ 45. I dissented from the new rules because I thought they amounted to a "rationing of fairness." S.Ct. Order 05–01, 2006 WI 34, 287 Wis. 2d at xv-xvi, 714 N.W.2d Ct.R-21 (May 1, 2006) (Prosser, J., dissenting). Nonetheless, I expressed hope that time would prove me wrong. *Id.*

¶ 46. This is the first case since the revision of the cost rules that has required comment. The majority opinion correctly notes that this case was commenced before the effective date of the new rules; hence, "[t]he new rules do not apply . . . ." Majority op., ¶ 36. Nevertheless, the new rules provide relevant standards for an appeal briefed and decided after the new rules took effect, if the court had any inclination to exercise its discretion on costs. The former rules, which still apply, gave the court broad discretion on costs, without standards, which helps to explain why the court consistently declined to exercise its discretion.

¶ 47. The Office of Lawyer Regulation (OLR) charged Attorney Michael W. Tobin with ten counts of misconduct and asked that his license be suspended for two years. Attorney Tobin fought the charges, but he especially fought the level of discipline. Referee Richard C. Ninneman found that Attorney Tobin had committed nine of the ten charged counts but recommended that Tobin's license be suspended for four months. A four-month suspension is one-sixth of what OLR originally advocated.

¶ 48. OLR must have believed it was acting reasonably in seeking a two-year suspension. Nonetheless, any attorney facing such a lengthy loss of license is

269

nearly certain to oppose the level of discipline if the attorney believes the discipline is excessive. A two-year suspension will wipe out an attorney's normal livelihood, and a two-year suspension may stretch into three years during the reinstatement process. The reinstatement process (when a suspension equals six months or more) may also entail significant additional costs.

¶ 49.   In this case, Attorney Tobin substantially prevailed on the level of discipline before the referee, but OLR assessed him $12,061.91 for its full expenses in the prosecution. These costs for OLR come on top of the fees Tobin incurred for hiring an attorney for his defense. I am not here questioning the $12,061.91 in initial costs.

¶ 50.   But then OLR appealed, disagreeing with the referee's recommended level of discipline. Again OLR asked for a two-year suspension. Again, Attorney Tobin was required to defend himself. OLR loses in this appeal, but the court assesses Attorney Tobin an additional $2958.19 to pay for OLR's failed effort.

¶ 51.   I acknowledge that Attorney Tobin has not objected to any of these costs. I suspect he knows the meter is running and has simply given up, believing that this court will rebuff any appeal for leniency on costs. But I object in principle. The new costs of $2958.19 are not appropriate or reasonable because Tobin won the appeal.

¶ 52.   To sum up, I concur in the discipline but do not approve the final $2958.19 of costs for this appeal. In this regard, I respectfully dissent.