# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP2530-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter Disciplinary Proceedings Against Carl Robert Scholz, Attorney at Law: |
| | Office of Lawyer Regulation, Complainant-Respondent, v. Carl Robert Scholz, Respondent-Appellant. |

DISCIPLINARY PROCEEDINGS AGAINST SCHOLZ

| | |
|---|---|
| OPINION FILED: | November 10, 2020 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

JUSTICES:

Per Curiam.

NOT PARTICIPATING:

BRIAN HAGEDORN, J., did not participate.

ATTORNEYS:

For the respondent-appellant, there was a brief filed by *Carl R. Scholz*, Mequon.

For the complainant-respondent, there was a brief filed by *John T. Payette* and *Office of Lawyer Regulation*.

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

No. 2017AP2530-D

STATE OF WISCONSIN      :      IN SUPREME COURT

**In the Matter Disciplinary Proceedings Against Carl Robert Scholz, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant-Respondent,**

      **v.**

**Carl Robert Scholz,**

      **Respondent-Appellant.**

**FILED**

**NOV 10, 2020**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. This disciplinary matter comes to the court on Attorney Scholz's appeal of a report and recommendation filed by Referee Kim M. Peterson. The referee concluded that Attorney Scholz committed ten counts of professional misconduct in connection with his representation of A.B., and recommended a one-year suspension of Attorney Scholz's law license. Attorney Scholz challenges the recommended suspension; he argues that it is excessive in light of the totality of the facts and

circumstances surrounding his representation of A.B. and he seeks a more lenient sanction.

¶2 When we review a referee's report and recommendation in an attorney disciplinary case we affirm the referee's findings of fact unless they are found to be clearly erroneous, and we review the referee's conclusions of law on a de novo basis. In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. We determine the appropriate level of discipline given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶3 After reviewing this matter and considering Attorney Scholz's appeal, we accept the referee's factual findings and legal conclusions. However, we have determined that a two-year suspension, as originally sought by the Office of Lawyer Regulation (OLR), is appropriate. We reserve the question of restitution, pending receipt of supplemental briefing requested by separate order of this court, and we impose the costs of this proceeding on Attorney Scholz.

¶4 Attorney Scholz was admitted to practice law in Wisconsin in 1994. He practices in Mequon. In 2011, he was privately reprimanded for failing to hold client funds in trust when he deposited a client's advance fee payment directly into his business account without giving the requisite alternative fee notices and then he used the funds to pay a personal tax obligation, and for transferring client funds from his trust

2

account to his business account without giving notice to the client at the time of the transfer that the funds represented a fee payment. Private Reprimand, No. 2011-21.[1]

¶5 On December 27, 2017, the OLR filed a ten-count disciplinary complaint relating to his representation of A.B. in a foreclosure/partition action between A.B. and her former daughter-in-law, K.D. The complaint alleged that Attorney Scholz converted funds that were to be held in trust, then engaged in various misrepresentations to hide his misconduct. The complaint sought a two-year license suspension and restitution of $60,975.94 paid either to the Ozaukee County Circuit Court or to opposing counsel's trust account, pending resolution of the foreclosure/partition action between Attorney Scholz's client, A.B., and K.D.

¶6 The referee conducted a two-day hearing in January 2019 and concluded that the OLR had proved, by clear and convincing evidence, all ten counts of misconduct. The referee recommended we impose a one-year suspension and costs, but did not address restitution. Attorney Scholz appeals.

¶7 This matter has a long history that will be greatly abridged for purposes of this opinion. In 1985, A.B., her husband, and their son, D.B., purchased a partially constructed home on almost 80 acres of land in Ozaukee County. Several years later, D.B. married K.D. The two couples co-owned the

---

[1] Electronic copy available at https://compendium.wicourts.gov/app/raw/002454.html.

property until K.D. filed for divorce from D.B. in 2008. D.B. had been in prison since 1994. Attorney Scholz represented D.B. in the divorce.

¶8 The primary issue in the divorce was the division of the jointly owned residence and surrounding real estate. A.B. hired Attorney Donald Fraker, who filed a separate lawsuit to assert her interests in the shared property. Months of collateral litigation ensued. During this time, A.B.'s husband passed away. The court ruled that D.B. and K.D. (whose divorce was still pending) jointly owned a one-half interest in the property and A.B. owned the other one-half interest. Eventually, in the divorce action, K.D. was awarded the one-half interest in the property and was assigned responsibility for the outstanding mortgage.

¶9 In May 2012, a foreclosure action was filed against the property. A.B. and K.D. litigated who was responsible for the unpaid mortgage. Then, the Department of Natural Resources (DNR) purchased most of the jointly owned acreage. After the mortgagee was paid along with some other expenses, there remained approximately $180,000, plus the house and a five-acre lot. A.B. and K.D. proceeded to litigate their respective rights to this property.

¶10 In February 2013 A.B. and K.D. reached a stipulation providing that their lawyers would each hold half the disputed funds in their respective trust accounts pending the outcome of the lawsuit to partition the property. The stipulation stated, "Such funds shall continue to be held in such trust accounts, to

4

be disbursed as later may be agreed upon in writing by the parties or ordered by the Court." The stipulation was approved by court order issued on February 22, 2013.

¶11 This brings us to Attorney Scholz's involvement in the matters giving rise to this disciplinary proceeding. In June 2013, Attorney Scholz assumed representation of A.B. from Attorney Fraker. At the time, Attorney Fraker held in trust $91,545.64 in disputed funds, pursuant to the terms of the stipulation. Attorney Fraker had "earmarked" approximately $30,000 of these funds for his own attorney fees but offered to disburse the remaining two-thirds to Attorney Scholz as part of the substitution of attorneys. When this occurred, in Attorney Scholz's own words, "[A.B.] and [Attorney Scholz] struck a deal that would enable her to continue the fight [against K.D.]."

¶12 At the ensuing disciplinary hearing Attorney Scholz revealed that he and A.B. had agreed that she would "loan" Attorney Scholz the balance of the disputed funds. In exchange, Attorney Scholz promised to represent A.B. for the duration of her case against K.D. for a $5,000 fee payable at some future date plus 10 percent of any recovery obtained for her. This "deal" was memorialized in a pair of written agreements.

¶13 On July 8, 2013, Attorney Fraker disbursed $60,975.94 of the disputed funds to Attorney Scholz. Attorney Scholz deposited the disputed funds into his business account – not a trust account. Attorney Scholz then began spending the money, mostly for his own benefit, and by mid-August, it was gone. We will not recount all the transactions. Summarized, the OLR

5

alleged that Attorney Scholz disbursed at least $60,343.40 of the $60,975.94 for his own purposes, or for the benefit of other clients or third parties, thereby converting at least $60,343.40 as of August 12, 2013.

¶14 Meanwhile, A.B. and K.D. were still litigating ownership of these funds. Commencing in August 2013, their lawyers participated in a mediation and reached a written one-page "Interim Agreement" whereby K.D.'s lawyer could "release funds in her trust account to her client [K.D.]." There was no written agreement that A.B.'s lawyers could disburse any of the disputed funds. During this mediation Attorney Scholz did not disclose that he had already disbursed nearly all of the disputed funds he was supposed to be holding in trust.

¶15 In December 2013, following another mediation session, Attorney Scholz told Attorney Fraker that he could disburse to himself the $29,069.73 he had earmarked for attorney fees, and Attorney Fraker did so.

¶16 In February 2014, Attorney Scholz filed an amended cross-claim in the civil property/partition dispute on behalf of A.B. The pleading states that $183,091.29 of disputed funds had not been divided and remained to be partitioned. Attorney Scholz did not advise the court that these funds were no longer in trust.

¶17 On January 29, 2015, mediation having failed, the court appointed a Special Master to decide A.B.'s and K.D.'s rights and interests in the disputed funds and property. In June 2015, the Special Master advised the attorneys that he was

6

awaiting more information from K.D.'s attorney and that he had received "no information or accounting" from Attorney Scholz. The Special Master informed both attorneys that he expected that "full accountings with supporting documents would be in [his] office no later than July 1, 2015." Attorney Scholz did not provide the accounting. On July 1, 2015, the Special Master wrote to the attorneys, stating, as relevant here: "As to Mr. Scholz I have heard nothing further regarding documentation." Attorney Scholz asked for more time to respond but then failed to do so.

¶18 On July 15, 2015, the Special Master issued a report determining that K.D. was entitled to 97 percent of the proceeds of any sale of the home and property. K.D.'s lawyer then asked the Special Master to explicitly resolve the allocation of the disputed funds. The Special Master forwarded this email to Attorney Scholz and requested a response by July 30, 2015. Attorney Scholz did not respond. On August 4, 2015, the Special Master sent a follow-up letter asking if Attorney Scholz had any response or disagreement. Again, Attorney Scholz did not respond.

¶19 On August 6, 2015, the Special Master filed an amended report with the court, which allocated 97 percent of the disputed funds to K.D. The Special Master added that when the acreage had been sold, certain expenses had been paid from the sale proceeds that were A.B.'s obligations. These amounts included some $28,034.97 in legal fees paid to Attorney Scholz for D.B.'s divorce. The Special Master ordered that K.D. should

7

be reimbursed for these expenditures before the remaining disputed funds were distributed between A.B. and K.D.

¶20 Attorney Scholz filed a formal objection to the Special Master's amended report. A.B. filed for bankruptcy.

¶21 In January 2016, Attorney Scholz and K.D.'s lawyer told the circuit court that the remaining property had been sold, subject to bankruptcy court approval, and disclosed that they no longer held in trust any of the disputed funds from the DNR sale. The circuit court expressed consternation, stating: "You two are going to get in a lot of trouble on this. There's a court order that said that was to be maintained in the trust accounts, and you cannot just disregard a court order."

¶22 K.D.'s lawyer clarified that she had relied on the written interim agreement prepared by their mediator as "written agreement by the parties." The court then addressed Attorney Scholz: "[I]t certainly looks like there was an agreement that [K.D.'s lawyer] could release the funds in her trust account to her client. It doesn't say anything about [A.B.] releasing those funds. She better find a way to restore them, or there's going to be contempt proceedings." The court continued addressing Attorney Scholz:

> Because you know what? That is - that is an ethical violation, what you did there. And I have an obligation to report that, Mr. Scholz, and I will do that. There was a court order, and there's nothing that says you can do what you did. You just went beyond what I said you could do, and that's a problem. That's a huge problem.

8

¶23 Notably, the circuit court assumed Attorney Scholz had disbursed the funds to A.B. Attorney Scholz did not inform the court that he had "borrowed" the money from A.B. or that he had arranged to reimburse A.B. in part with services-in-kind. He also told the court that parts of the mediator's interim agreement were missing, implying the missing pages would confirm his right to disburse funds. The interim agreement was a one-page document.

¶24 The circuit court directed Attorney Scholz to submit an "accounting" of his disbursement of the disputed funds. Attorney Scholz submitted a one-page document that the referee later found was a misrepresentation of what had transpired. Attorney Scholz also provided the court with a "receipt" purportedly signed by A.B. on December 23, 2013, which stated that she had received $50,975.94 "as the balance of her share of the proceeds . . . " and purported to authorize Attorney Scholz to retain $10,000 toward past and future expenses related to the representation. As of December 23, 2013, Attorney Scholz had not made any such payment to A.B. and he was no longer holding any of the disputed funds in trust.

¶25 Following the evidentiary hearing and submission of post-hearing briefs, the referee determined that the OLR clearly and convincingly proved that Attorney Scholz committed all ten counts of misconduct:

> **Count One:** By converting to his own use or purposes, or for the benefit of other clients or third parties,

9

funds that he was to hold in trust, Attorney Scholz violated SCR 20:8.4(c).[2]

**Count Two:** By failing to hold in trust, separate from his own property, the proceeds from the sale of the parcel of land, Attorney Scholz violated SCR 20:1.15(b)(1).[3]

**Count Three:** By failing to hold all of the disputed funds in trust until the dispute was resolved, Attorney Scholz violated former SCR 20:1.15(d)(3).[4]

---

[2] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[3] SCR 20:1.15(b)(1) provides:

A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

[4] Effective July 1, 2016, substantial changes were made to Supreme Court Rule 20:1.15, the "trust account rule." See S. Ct. Order 14-07, 2016 WI 21 (issued Apr. 4, 2016, eff. July 1, 2016). Because the conduct underlying this case arose prior to July 1, 2016, unless otherwise indicated, all references to the supreme court rules will be to those in effect prior to July 1, 2016.

Former SCR 20:1.15(d)(3) provided:

When the lawyer and another person or the client and another person claim ownership interest in trust property identified by a lien, court order, judgment, or contract, the lawyer shall hold that property in trust until there is an accounting and severance of the interests. If a dispute arises regarding the division of the property, the lawyer shall hold the disputed portion in trust until the dispute is resolved. Disputes between the lawyer and a client are subject to the provisions of sub.(g)(2).

**Count Four:** By failing to hold the disputed funds in trust until there was a written agreement or court order permitting the release of the funds, Attorney Scholz violated SCR 20:3.4(c).[5]

**Count Five:** By causing Attorney Fraker to disburse the funds he was holding in trust, when there was no written agreement or court order authorizing the disbursement, Attorney Scholz violated SCR 20:3.4(c), via SCR 20:8.4(a).[6]

**Count Six:** By engaging in communications with the mediator and opposing counsel regarding whether Attorney Scholz could disburse any of the disputed funds, when Attorney Scholz had already disbursed substantially all of the disputed funds, Attorney Scholz violated SCR 20:8.4(c).

**Count Seven:** By failing to respond to opposing counsel's filings with the Special Master or the Special Master's requests for [A.B.'s] response to opposing counsel's filings, or to clarify whether the Special Master had granted Attorney Scholz's request for additional time to respond and the deadline to do so, Attorney Scholz violated SCR 20:1.3.[7]

**Count Eight:** By presenting false evidence to the court regarding his handling of the disputed funds and his client's receipt of funds, by making false statements to the court regarding his handling and disbursement of the disputed funds, and by failing to

---

[5] SCR 20:3.4(c) provides: "A lawyer shall not knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists."

[6] SCR 20:8.4(a) provides: "It is professional misconduct for a lawyer to violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another."

[7] SCR 20:1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

correct false statements he made to the court, Attorney Scholz violated SCR 20:3.3(a)(l)[8] and (3).[9]

**Count Nine:** By failing to maintain a pooled interest-bearing trust account between sometime prior to August, 2010, and November 12, 2014, and failing during that period of time to participate in the Interest on Trust Accounts Program, Attorney Scholz violated, former SCR 20:1.15(c)(1), current SCR 20:1.15(c)(1),[10] and SCR 13.04.[11]

---

[8] SCR 20:3.3(a)(l) provides: "A lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

[9] SCR 20:3.3(a)(3) provides:

A lawyer shall not knowingly offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter that the lawyer reasonably believes is false.

[10] The relevant text of SCR 20:1.15(c)(1) provides:

A lawyer or law firm who receives client or 3rd-party funds that the lawyer or law firm determines to be nominal in amount or that are expected to be held for a short period of time such that the funds cannot earn income for the benefit of the client or 3rd party in excess of the costs to secure that income, shall maintain a pooled interest-bearing or dividend-paying draft trust account in an IOLTA participating institution.

[11] SCR 13.04(1) provides:

(1) An attorney shall participate in the program as provided in SCR 20:1.15 unless:

(a) The attorney certifies on the annual trust account statement filed with the state bar that:

12

**Count Ten:** By making misrepresentations to the OLR during the course of the investigation of this matter, Attorney Scholz violated SCR 22.03(6),[12] enforceable via SCR 20:8.4(h).[13]

¶26 The referee found that Attorney Scholz was "careless and negligent" and described his misconduct as "serious" stating:

> In this case, the misconduct Scholz engaged in is serious. Scholz not only improperly converted funds, but he covered up his conduct over the course of several years with several instances of misleading omissions and false representations to the court, opposing counsel, the OLR, [the Special Master] and [the mediator]. While Scholz's conduct might not have harmed his client, it did harm the opposing party, who lost out on the funds he improperly distributed to himself, and later his client.

---

1. Based on the attorney's current annual trust account experience and information from the institution in which the attorney deposits trust funds, service charges on the account would equal or exceed any interest generated; or

2. Because of the nature of the attorney's practice, the attorney does not maintain a trust account; or (b) The board, on its own motion or upon application from an attorney, grants a waiver from participation in the program for good cause.

[12] SCR 22.03(6) provides: "In the course of the investigation, the respondent's willful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

[13] SCR 20:8.4(h) provides: "It is professional misconduct for a lawyer to fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1)."

However, the referee apparently accepted many of Attorney Scholz's explanations, characterizing the conversion as an "improper loan" and finding that Attorney Scholz "repaid it quickly." The referee observed: "[i]n this case, Attorney Scholz's conduct did not injure his client, and he did not appear to manipulate or steal from his client, rather he took an improper loan, and repaid that quickly. He did not breach a client's trust . . .."

¶27 The referee deemed a one-year license suspension sufficient and recommended that Attorney Scholz should be required to pay the full costs of this proceeding. The OLR's statement of costs discloses that these costs were $16,804.30 as of March 17, 2020. The report does not mention restitution.

¶28 We turn to the merits of Attorney Scholz's appeal. He explains that:

> [t]his appeal was not brought for the purpose of overturning that decision, but rather, as a plea for leniency based on the extraordinary nature of this case, the good work that was done, and the result that was ultimately obtained for a very special lady, all of which was overshadowed by [Scholz's] carelessness, neglect and in some instances, disregard for the Rules of Professional Conduct.

¶29 We first consider the referee's factual findings. Attorney Scholz does not challenge the referee's factual findings, per se, taking issue only with "certain inferences." There has been no showing that any of the referee's findings are clearly erroneous and we accept and affirm those findings.

14

¶30 We turn to the referee's conclusions of law. Attorney Scholz questions the conclusion that he violated SCR 20:1.3 (Diligence), as alleged in Count 7:

> By failing to respond to opposing counsel's filings with the Special Master or the Special Master's requests for [A.B.'s] response to opposing counsel's filings, or to clarify whether the Special Master had granted Attorney Scholz's request for additional time to respond and the deadline to do so, Attorney Scholz violated SCR 20:1.3.

¶31 Attorney Scholz maintains that he gave the Special Master adequate information shortly after the Special Master was appointed. He argues that his efforts on A.B.'s behalf reflect his "commitment" and "dedication" and "zeal." It is clear from the record, however, that Attorney Scholz repeatedly failed to respond to the Special Master's requests for information. As the OLR observed, Attorney Scholz's lack of diligence in in this regard "deprived [A.B.] of credit for any of the other value she contributed to the property." Referee Peterson found that "[i]n the end, Scholz never filed any substantive written response to [the Special Master's] report." We affirm the referee's determination that Attorney Scholz violated SCR 20:1.3.

¶32 Attorney Scholz does not challenge the referee's other conclusions of law, including her conclusion that he converted the disputed funds in violation of SCR 20:8.4(c), and the record supports the referee's conclusions. We emphasize that Attorney Scholz's temporary use of the disputed funds constitutes conversion notwithstanding the referee's unchallenged finding that he "repaid" A.B.; his use of the funds does not have to be

15

a permanent deprival.   In re Disciplinary Proceedings Against Mulligan, 2015 WI 96, ¶36, 365 Wis. 2d 43, 870 N.W.2d 233 (citing In re Disciplinary Proceedings Against Weigel, 2012 WI 124, ¶41, 345 Wis. 2d 7, 823 N.W.2d 798 (quoting ABA/BNA Lawyers' Manual on Professional Conduct § 45:503 (2007)).  The referee's other conclusions are supported by the record and we affirm them.

¶33 We turn to considering the appropriate sanction for Attorney Scholz's misconduct.  We are free to impose discipline more or less severe than that recommended by the referee.  In re Disciplinary Proceedings Against Krill, 2020 WI 20, ¶54, 390 Wis. 2d 466,  938  N.W.2d 589,  (citing  In  re  Disciplinary Proceedings Against Elliott, 133 Wis. 2d 110, 394 N.W.2d 313 (1986); In re Disciplinary Proceedings Against Reitz, 2005 WI 39, 279 Wis. 2d 550, 694 N.W.2d 894).  The OLR requested a two-year suspension.  The referee recommended we impose a one-year suspension.

¶34 On this appeal, Attorney Scholz asks the court to impose a still more lenient suspension.  He emphasizes that A.B. was not a grievant and maintains that she was "a knowing and consenting participant in the transaction."  He argues that certain disciplinary cases support a more lenient sanction, citing In re Disciplinary Proceedings Against Tobin, 2007 WI 50, 300 Wis. 2d 250, 730 N.W.2d 896 (imposing four month suspension for nine counts of misconduct, including converting funds belonging to a number of third parties for personal use in violation of  SCR 20:1.15(b)(1)  and  SCR 20:8.4(c)) and In re

Disciplinary Proceedings Against Bartz, 2015 WI 61, 362 Wis. 2d 752, 864 N.W.2d 881 (imposing a 60-day suspension on an attorney who committed five counts of misconduct, including conversion of third-party funds in violation of SCR 20:1.15(b)(1) and SCR 20:8.4(c), and who failed to cooperate with the OLR's investigation).

¶35 Tobin is inapposite. The four-month suspension we imposed there reflected "numerous mitigating factors" including a lack of disciplinary history, Attorney Tobin's admission of misconduct, and Attorney Tobin's voluntary payment of restitution to his trust account. Id., ¶33. We are similarly unpersuaded by Bartz. There, the lawyer stipulated that he failed to timely disburse a few thousand dollars to one medical provider, but he ultimately paid the bill. Attorney Scholz, by contrast, committed ten counts of misconduct, converted tens of thousands of dollars via a "loan" of funds that he knew or should have known his client was not entitled to make, ignored court orders, and then systematically misrepresented what he did to hide his misconduct, resulting in a significant loss to K.D.

¶36 We conclude that the facts of this case and our case law indicate a two-year suspension is appropriate. See In re Disciplinary Proceedings Against Krezminski, 2007 WI 21, 299 Wis. 2d 152, 727 Wis. 2d 492 (imposing two-year suspension for misconduct that included conversion of $37,094.42 entrusted to the lawyer as personal representative of an estate, and the filing of a document containing false information with the probate court). The referee apparently considered the

17

Krezminski case distinguishable, noting that Attorney Krezminski stole from his own client. Attorney Scholz may not have stolen from his client, but the record indicates he colluded with that client, making an improper agreement to avail himself of disputed funds that were not the client's to loan, at the expense of K.D. As the referee found, while Attorney Scholz's conduct might not have harmed his client, it did harm K.D. "who lost out on the funds he improperly distributed to himself, and later his client." See also In re Disciplinary Proceedings Against Goldstein, 2010 WI 26, 323 Wis. 2d 706, 782 N.W.2d 388 (imposing two-year license suspension for various trust account violations and conversion of approximately $70,000 in client funds despite the referee's finding of "no harm" because the attorney had reimbursed his clients).

¶37 Attorney Scholz's misconduct reflects a callous disregard for the rights of the opposing party, and his fundamental obligation as an officer of the court to honor and obey circuit court orders. He lied to opposing counsel, the mediator, the circuit court judge, a court-appointed special master and to the OLR, all in an effort to conceal his conversion. He fabricated documents that he submitted to the court to try to conceal his misconduct. Considering the precedent cited by the OLR, coupled with a number of aggravating factors, including his prior discipline, we have no difficulty concluding that a suspension of two years is appropriate. Indeed, a lengthy suspension is necessary to impress upon Attorney Scholz and other lawyers in this state the seriousness

18

of the professional misconduct at issue here, and to protect the public from similar misconduct in the future. See In re Disciplinary Proceedings Against Roitburd, 2016 WI 12, ¶20, 368 Wis. 2d 595, 882 N.W.2d 317 (stating that "it is ultimately this court's responsibility" to determine appropriate disciplinary sanctions).

¶38 We turn next to the issue of costs. Our general practice is to impose full costs on attorneys who are found to have committed misconduct. See SCR 22.24(1m). Attorney Scholz has not claimed that there are reasons to depart from that practice in this matter, and we have not found any reason to do so. We therefore impose full costs.

¶39 Finally, we reserve our final ruling regarding the issue of restitution pending receipt of supplemental briefing as ordered by this court. Upon receipt of the OLR's memorandum and any response from Attorney Scholz, an order resolving the restitution question will issue in due course. Therefore,

¶40 IT IS ORDERED that the license of Carl Robert Scholz to practice law in Wisconsin is suspended for a period of two years, effective December 22, 2020.

¶41 IT IS FURTHER ORDERED that Carl Robert Scholz shall comply with the requirements of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶42 IT IS FURTHER ORDERED that within 60 days of the date of this order Carl Robert Scholz shall pay to the Office of

Lawyer Regulation the costs of this proceeding, which are $16,804.30 as of March 17, 2020.

¶43 IT IS FURTHER ORDERED that the court reserves the question of restitution pending consideration of court ordered briefing as set forth in this court's order dated November 10, 2020.

¶44 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. <u>See</u> SCR 22.29(4)(c).

¶45 BRIAN HAGEDORN, J., did not participate.